## WHITFIELD v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 14526. Decided Feb 18, 1935

Malcolm E. Molner, Cleveland, and Morton M. Stotter, for plaintiff in error.

Ezra Z. Shapiro, Director of Law, Cleveland, Michael A. Picciano, Assistant Director of Law, Cleveland, and Stephen Gobozy, Assistant Director of Law, Cleveland, for defendant in error.

Hawes & Walsh, Raymond A. Walsh, and Bon Geaslin, Amicus Curiae.

## OPINION

By LEVINE, J.

Plaintiff in error relies mainly upon the contention that the judgment rendered by the trial court is contrary to the Constitution of the United States, and that §2228-1 GC is likewise contrary to the Constitution of the United States, in that it violates Article XIV, §1, of the Amendments to the Constitution, and also Article I, §8, Clause 3 of the Constitution.

Article XIV, §1, of the Amendments to the Federal Constitution reads, in part, as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of Citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws."

Article I, §8, Clause 3, denominated "Interstate Commerce Clause", reads as follows:

"The Congress shall have power * * * (3) To regulate Commerce with Foreign Nations

and among the several states and with the Indian Tribe."

It is urged that §2228-1 GC when it provides "that goods, wares or merchandise, manufactured or mined wholly or in part in any other state by convicts or prisoners shall be excluded from the open market in the State of Ohio", abridges the privileges and immunities of citizens of the United States, in that it deprives a citizen of the United States, who has merchandise made by convicts of another state, from competing with convict-made goods in the State of Ohio.

It is further urged that the Interstate Commerce clause of the Federal Constitution vests sole authority to regulate commerce among the several states in the Congress of the United States; that the State of Ohio, by virtue of said §2228-1 GC, attempts to regulate interstate commerce between itself and other states of the Union.

It has been held in Brown v Maryland, 12 Weaton, 419, that "The State cannot divide an Interstate Journal into segments."

It is insisted that the power to regulate interstate commerce granted by the Constitution to Congress is exclusive in its character, so as to preclude the statutes from exercising such right or power. It is likewise insisted that Congress has the power not only to authorize the importation between the states, but that it also has the power to authorize importers to sell, and that the State of Ohio therefore has no power to impose a law which in any way hinders or prohibits the free flow of commerce among the states.

Since Congress has the right to authorize the importation between the states, it also has the power to authorize the importers to sell. The State of Ohio, therefore, it is contended has no power to impose a law which in any way prohibits the free flow of commerce between the states.

In its final analysis, the question presented to us may be summarized as follows: Granting that it is within the exclusive power of Congress to authorize the importation of goods and merchandise of other states into the State of Ohio, to what extent, if any, is the State of Ohio possessed of power to regulate the sale of goods that have been so imported from another state?

Sec 2228-1 GC was enacted in accordance with the spirit of **Article II, §41 of the Constitution of the State of Ohio,** and reads as follows:

"Abolishing prison contract labor. Laws shall be passed providing for the occupation and employment of prisoners sentenced to the several penal institutions and reformatories in the State; and no person in any such penal institutions or reformatories while under sentence thereto shall be required or allowed to work at any trade, industry or occupation, wherein or whereby his work, or the produce or profit of his work, shall be sold, farmed out, controlled or given away; and goods made by persons under sentence to any penal institutions or reformatories without the state of Ohio, and such goods made within the state of Ohio, excepting those disposed of to the State or any political subdivision thereof or to any public institution owned and managed or controlled by the State or any political subdivision thereof, **shall not be sold** within this State unless the same are conspicuously marked 'prison made'. Nothing herein contained shall be construed to prevent the passage of laws providing that convicts may work for, and that the products of their labor may be disposed of to, the state or any political subdivision thereof, or for or to any public institution owned or managed and controlled by the State or any political subdivision thereof. (Adopted September 13th, 1912)". And see §13170 GC.

The laws of Ohio prohibit the manufacture of convict-made goods in Ohio, except for use in correctional institutions, and thereby preclude their sale in the open market. The argument of plaintiff in error to the effect that §2228-1 GC deprives citizens of the United States who have merchandise made by convicts of other states from competing with convict-made goods in the State of Ohio, appears to us without force, since the use to be made of convict-made goods in Ohio is limited to correctional and other public institutions.

As we interpret the laws of Ohio, there can be no sale in the open market of goods made by convicts in the State of Ohio; and that the use of such manufactured convict-made goods in Ohio is limited so as to preclude their sale in the open market. There is, therefore, no discrimination against citizens of other states when they are prohibited from selling convict-made goods manufactured in another state in the open market in the State of Ohio.

We are cited to the case of **Arnold v Yanders, 56 Oh St page 417,** in which the court held that the Act of May 19th, 1894, 91 O. L. 346, entitled: "An Act to Regulate the sale of convict-made goods, wares and merchandise, manufactured by convicts in other

---

states," is in conflict with §8 of Article One of the Constitution of the United States and is therefore void. In the opinion the court said:

"It is not competent for a state legislature to declare that convict-made goods are not articles of traffic and commerce, and then to act upon such declaration, and discriminate against such goods, or exclude them from the state by unfriendly legislation. Whatever congress, either by silence or by statute, recognizes as an article of traffic and commerce, must be so received and treated by the several states."

"There is no act of congress declaring that convict-made goods are not fit for traffic and commerce, and it therefore follows that such goods are the subject of commerce, and when transported from one state to another for sale or exchange, become articles of interstate commerce, and entitled to be protected as such; and any discrimination against such goods in the state where offered for sale is unconstitutional."

The basis of the decision it will be seen was that Congress has not at that time excluded convict-made goods as articles of traffic and commerce. On page 421 of the opinion in Arnold v Yanders, supra, the court said:

"The mere silence of Congress is not sufficient to authorize a state legislature to legislate upon a subject vested by the Constitution in Congress, but such silence is to be regarded as evincing the intention of Congress that the powers shall remain where the Constitution has placed them.

"To give a state legislature power to legislate in such cases, requires an act of Congress to that effect. (Leisy v Hardin, 135 U. S. 100; Welton v Missouri, 91 U. S. 275)".

The basis of the decision of the Supreme Court of Ohio in Arnold v Yanders, supra, no longer exists.

The Act of Congress, approved January 19th, 1929, and effective January 19th, 1934, known as the Hawes-Cooper Act, 45 Stat. 184; 49 U.S.C.A. §65, supplied authority which empowered the State of Ohio to act. The Hawes-Cooper Act is entitled: "An act to divest goods, wares and merchandise, manufactured, produced or mined by convicts or prisoners of their interstate character in certain cases."

"That all goods, wares, and merchandise, manufactured, produced, or mined, wholly or in part, by convicts or prisoners, except convicts or prisoners on parole or probation, except commodities manufactured in Federal penal or correctional institutions for use by the Federal Government, transported into any state or territory of the United States and remaining therein for use, consumption, sale, or storage, shall upon arrival and delivery in such state or territory be subject to the same extent and in the same manner as though such goods, wares, and merchandise, had been manufactured, produced, or mined in such state or territory, and shall not be exempt therefrom by reason of being introduced in the original package or otherwise."

The effect of the Hawes-Cooper Act is to place convict-made goods manufactured in another state in the same category as convict-made goods manufactured in the State of Ohio, and subject to the authority and control of the State of Ohio.

We conclude:

First: That Congress, to the exclusion of the States, is vested with power to regulate interstate commerce; and that until Congress exercised its authority and enacted regulation on the subject, such commerce was free and unrestricted. It is just as well settled that Congress may carry its regulation of interstate commerce to the point of prohibition of the interstate transportation of such articles as may spread evil or harm to the people of states other than the states of origin.

Clark Distilling Co. v Western Maryland Ry. Co., 242 U. S. 211, 61 L. ed. 326;

Brooks v United States, 267 U. S. 432, 69 L. ed. 699;

Bennett v United States, 194 Fed. 630;

West Virginia v Adams Express Co., 219 Fed. 12 C.J. 60.

Second: Congress may, in the exercise of its power to regulate interstate commerce, place an article under the jurisdiction of the police power of the State upon its arrival in such state. Leisy v Hardin, 135 U. S. 100.

In Bowman v Railway Company, 125 U. S., 485, 31 L. ed. 700, the court held:

"The transportation of commodities between the states shall be free except where it is positively restricted by Congress itself, or by the states in particular cases by the express permission of Congress."

Third: Since the Hawes-Cooper Act ex-

pressly makes convict-made goods in other states transported to another state subject to the jurisdiction and regulation of the states to which they were transported, the State of Ohio, under its police power may pass laws for the promotion of the general welfare and prosperity of its citizens. The police power of the state is the inherent power to enact laws necessary to protect the order, safety, health, morals and general welfare of the people of the State.

Fourth: The State of Ohio may, by legislation, determine the public policy of the State and to declare that the sale of prison-made goods in the open market will result in the destruction of the general welfare, prosperity and safety of the citizens of the State.

"There is no more important concern than to safeguard the freedom of labor upon which alone can enduring prosperity be heard." Bailey v Alabama, 219 U. S. 219, 55 L. ed. 191."

It is a matter of common knowledge that industries employing free labor required to pay taxes, interest on capital, and other items of overhead which are not included in the cost of prison-made goods, can not compete successfully in the open market with prison-made goods and maintain the standard of wages which enables free labor to earn a decent living, or enable such industries to meet wage standards which have been established under national and state legislation. That prison-made goods can be sold in the open market at a price which is below the actual cost of production of manufacturers employing free labor, is patent.

Fifth: Under the terms of the Hawes-Cooper Act, the products of prisoners of other states are, upon their arrival and delivery in Ohio, placed upon the same footing as prison-made goods "produced in such state," and the legislature may provide that they shall not be sold in the open market in Ohio.

Sixth: In **Arnold v Yanders, 56 Oh St page 422,** the court declared void the act of the Ohio Legislature, which sought to regulate the sale of goods produced by prisoners in other states. The sole basis of the decision was that whatever Congress, either by silence or by statute, recognized as articles of traffic and commerce, must be so received and treated by the several states, and that since there is no act of Congress declaring that convict-made goods are not fit for traffic and commerce, it therefore follows that such goods are the subject of commerce, and when transported from one state to another for sale or exchange become articles of interstate commerce, and are entitled to be protected as such; and any discrimination against such goods in the state where offered for sale is unconstitutional. The necessary permission of Congress which was then lacking is now supplied by the Hawes-Cooper Act, and the legislature therefore may constitutionally, in conformity with long standing public policy, take such steps as may be necessary to prevent the products of prisoners from other states from entering the open markets of Ohio and wield their evil influence.

In view of the above considerations, the judgment of the Municipal Court is affirmed.

LIEGHLEY, PJ, and TERRELL, J, concur in judgment.