## WHITFIELD v. OHIO.

No. 377.   Argued February 7, 1936.—Decided March 2, 1936.

*Mr. Wm. Logan Martin,* with whom *Messrs. Perry W. Turner* and *Thomas E. Knight, Jr.,* were on the brief, for petitioner.

*Mr. John W. Bricker,* Attorney General of Ohio, and *Mr. Alfred Clum,* with whom *Messrs. Bon Geaslin, Stephen Gobozy, William S. Evatt, Harry B. Hawes,* and *Raymond A. Walsh* were on the brief, for respondent.

By leave of Court, briefs of *amici curiae* were filed by *Mr. John J. Bennett, Jr.,* Attorney General, and *Mr. Henry Epstein,* Solicitor General, on behalf of the State of New York; and by *Mr. Harry H. Peterson,* Attorney General, on behalf of the State of Minnesota, both urging affirmance of the decision of the court below.

Mr. Justice Sutherland delivered the opinion of the Court.

Petitioner was charged in the Municipal Court of Cleveland with a violation of § 2228–1 of the Ohio General Code, adopted March 23, 1933, which provides:

"After January 19, 1934, no goods, wares or merchandise, manufactured or mined wholly or in part in any other state by convicts or prisoners, except convicts or prisoners on parole or probation, shall be sold on the open market in this state."

By § 2228–2, a violation of this provision subjects the offender to a fine of not less than $25 nor more than $50 for the first offense. An Act of Congress passed January 19, 1929 (effective five years later), c. 79, §§ 1–2, 45 Stat. 1084, Title 49, U. S. C., § 60, commonly called the Hawes-Cooper Act, provides:

". . . All goods, wares, and merchandise manufactured, produced, or mined, wholly or in part, by convicts or prisoners, except convicts or prisoners on parole or probation, or in any penal and/or reformatory institutions, except commodities manufactured in Federal penal and correctional institutions for use by the Federal Government transported into any State or Territory of the United States and remaining therein for use, consumption, sale, or storage, shall upon arrival and delivery in such State or Territory be subject to the operation and effect of the laws of such State or Territory to the same extent and in the same manner as though such goods, wares, and merchandise had been manufactured, produced, or mined in such State or Territory, and shall not be exempt therefrom by reason of being introduced in the original package or otherwise."

The information contains two counts. The first count charges that petitioner, upon a day named, and within the City of Cleveland, Ohio, "did unlawfully sell on the

open market certain goods, wares or merchandise, to-wit: one dozen Chambray men's work shirts, which said merchandise was manufactured in whole or in part by convicts or prisoners at Wetumpka Prison in the State of Alabama; said prisoners so manufacturing said articles at the time of manufacturing same not being on parole or probation." By the second count it is charged that petitioner "did unlawfully sell for shipment to R. C. Kissack, via railway express from Wetumpka Prison in the State of Alabama to R. C. Kissack in the City of Lakewood, Ohio, . . . six dozen Chambray men's work shirts," manufactured by convicts or prisoners at the same prison in Alabama. The case was tried before the court upon a stipulation of facts substantially the same as those set forth in the information, with the addition, in respect of the first count, that the goods were sold in the original package as shipped by interstate commerce into the State of Ohio, and that there is nothing harmful, injurious, or deleterious about the goods sold; that the six dozen shirts mentioned in the second count were not delivered to Kissack at the time of sale, but were to be shipped to his residence in Lakewood, Ohio, by railway express from the prison in Alabama.

The case was tried without a jury. The court found petitioner guilty upon both counts, and sentenced him to pay a fine of $25 and costs.

An appeal was taken to the Court of Appeals of Ohio, Eighth District, Cuyahoga County, where the judgment was affirmed. 49 Ohio App. 530; 197 N. E. 605. A petition in error to the Supreme Court of Ohio was dismissed by that court on the ground that no debatable constitutional question was involved. 129 Ohio St. 543; 196 N. E. 164. This court granted certiorari.

Petitioner assails the constitutional validity of the Ohio statute and also of the Hawes-Cooper Act. The record fails to show that the points made by petitioner

in this court were properly raised in the trial court. But it sufficiently appears from the opinion of the appellate court that that court considered and passed upon the following contentions: that the Ohio statute abridged the privileges and immunities of petitioner as a citizen of the United States in violation of the Fourteenth Amendment, by depriving him of the privilege of selling goods, manufactured in Alabama by prison labor, in competition with citizens of Ohio engaged in selling like goods; that the Ohio statute constituted an unauthorized regulation of and a burden upon interstate commerce; and that the Hawes-Cooper Act constituted an unlawful delegation of the power of Congress to the States. These questions, therefore, are properly here for consideration. *Home Insurance Co.* v. *Dick,* 281 U. S. 397, 405–407; *Erie R. Co.* v. *Purdy,* 185 U. S. 148, 153.

The policy of the state of Ohio for many years, as evidenced by its constitution and laws, has been to protect the products of free labor against competition from similar products brought into existence by prison labor. A section of the state constitution (Art. II, § 41), adopted in 1918, provides:

"Laws shall be passed providing for the occupation and employment of prisoners sentenced to the several penal institutions and reformatories in the state; . . . and goods made by persons under sentence to any penal institution or reformatory without the State of Ohio, and such goods made within the State of Ohio, excepting those disposed of to the state or any political sub-division thereof or to any public institution owned, managed or controlled by the state or any political sub-division thereof, shall not be sold within this state unless the same a conspicuously marked 'prison made.' Nothing herein contained shall be construed to prevent the passage of laws providing that convicts may work for, and that the prod-

ucts of their labor may be disposed of to, the state or any political sub-division thereof, or for or to any public institution owned or managed and controlled by the state or any political sub-division thereof."

The court below proceeded upon the assumption that petitioner was a citizen of the United States; and his status in that regard is not questioned. The effect of the privileges and immunities clause of the Fourteenth Amendment, as applied to the facts of the present case, is to deny the power of Ohio to impose restraints upon citizens of the United States resident in Alabama in respect of the disposition of goods within Ohio, if like restraints are not imposed upon citizens resident in Ohio. The effect of the similar clause found in the Fourth Article of the Constitution, as applied to these facts, would be the same, since that clause is directed against discrimination by a state in favor of its own citizens and against the citizens of other states. *Slaughter-House Case,* 1 Woods 21, 28; *Bradwell* v. *State,* 16 Wall. 130, 138. As interpreted by the court below, the laws of Ohio passed in pursuance of the state constitution prohibit the sale in the open market of goods made in Ohio by convict labor. The statutory provision here challenged enforces, without discrimination, the same rule as to the convict-made goods of other states when they are brought into Ohio; and the contention in respect of the privileges and immunities clause must be rejected as without substance. Compare *Scott* v. *Donald,* 165 U. S. 58, 100; *Colgate* v. *Harvey,* 296 U. S. 404.

A serious question as to the infringement of the commerce clause of the Constitution is presented by the second count of the information. That count alleges that the prison-made goods described were sold to a purchaser in Ohio for shipment via railway express from a prison in Alabama. Whether the court below intended to sustain this count is not clear; but the state confines its

argument here to a defense of its asserted power to prohibit and penalize the sale of such goods upon the open market and the statute apparently goes no further than this. In any event, for present purposes, we lay that count out of the case, and limit our consideration to the first count. True, the petitioner was found guilty upon both counts, but the penalty imposed upon him does not exceed that which might have been exacted under the first count if it had stood alone. The case, therefore, falls within the rule, frequently stated by this court, that a judgment upon an indictment containing several counts, with a verdict of guilty upon each, will be sustained if any count is good, and sufficient in itself to support the judgment. *Claassen* v. *United States,* 142 U. S. 140, 146; *Evans* v. *United States,* 153 U. S. 584, 595; *Abrams* v. *United States,* 250 U. S. 616, 619; *Brooks* v. *United States,* 267 U. S. 432, 441.

The first count simply charges, in the terms of the statute, that petitioner unlawfully sold on the open market in Ohio certain goods made by prison labor in Alabama. These goods, according to the stipulation of facts, were sold in original packages as they were shipped in interstate commerce into Ohio. When the goods were sold, their transportation had come to an end; and the regulative power of the state had attached, except so far as that power might be affected by the fact that the packages were still unbroken. But any restrictive influence which that fact otherwise might have had upon the state power was completely removed by Congress, if the Hawes-Cooper Act be valid. That act is in substance the same as the Wilson Act with respect to intoxicating liquors, passed August 8, 1890, c 728, 26 Stat. 313, as construed and upheld by this court. *Rhodes* v. *Iowa,* 170 U. S. 412, 421–423, 426; *In re Rahrer,* 140 U. S. 545, 559–560, 562, 564. In effect, both acts provide (the one as construed and the other in terms) that the subject matter of the in-

terstate shipment shall, upon arrival and delivery in any state or territory, become subject to the operation of the local laws as though produced in such state or territory; and shall not be exempt therefrom because introduced in original packages. Each statute simply permits the jurisdiction of the state to attach immediately upon delivery, whether the importation remain in the original package or not. In other words, the importation is relieved from the operation of any rule which recognizes a right of sale in the unbroken package without state interference—a right the exercise of which never has been regarded as a fundamental part of the interstate transaction, but only as an incident resulting therefrom. *Rhodes* v. *Iowa, supra,* pp. 420, 423–424. The interstate transaction in its fundamental aspect ends upon delivery to the consignee.

The view of the State of Ohio that the sale of convict-made goods in competition with the products of free labor is an evil, finds ample support in fact and in the similar legislation of a preponderant number of the other states. Acts of Congress relating to the subject also recognize the evil. In addition to the Hawes-Cooper Act, the importation of the products of convict labor has been denied the right of entry at the ports of the United States and the importation prohibited. C. 497, § 307, 46 Stat. 689; Title 19 U. S. C. (1934 ed.), § 1307. And the sale to the public in competition with private enterprise of goods made by convicts imprisoned under federal law is forbidden. C. 340, § 5, 46 Stat. 391; Title 18 U. S. C. (1934 ed.), § 744c.

All such legislation, state and federal, proceeds upon the view that free labor, properly compensated, cannot compete successfully with the enforced and unpaid or underpaid convict labor of the prison. A state basing its legislation upon that conception has the right and power, so far as the federal Constitution is concerned, by non-discriminating legislation, to preserve its policy

from impairment or defeat, by any means appropriate to the end and not inconsistent with that instrument. The proposition is not contested that the Ohio statute would be unassailable if made to take effect after a sale in the original package. And the statute as it now reads is equally unassailable, since Congress has provided that the particular subjects of interstate commerce here involved "shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case," *In re Rahrer, supra*, p. 562, namely, upon arrival and delivery.

If the power of Congress to remove the impediment to state control presented by the unbroken-package doctrine be limited in any way (a question which we do not now find it necessary to consider), it is clear that the removal of that impediment in the case of prison-made goods must be upheld for reasons akin to those which moved this court to sustain the validity of the Wilson Act. Even without such action by Congress the unbroken-package doctrine, as applied to interstate commerce, has come to be regarded, generally at least, as more artificial than sound. Indeed, in its relation to that commerce, it was definitely rejected in *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 508–509, as affording no immunity from state taxation. "The interstate transportation," this court there concluded, "was at an end, and whether in the original package or not, a state tax upon the oil as property or upon its sale in the State, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject."

Whether that view of the doctrine as applied to state taxation should now be given a more general application, the Hawes-Cooper Act, being determinative of the case now under review, makes it unnecessary for us to decide.

■ That the Hawes-Cooper Act does not constitute a delegation of Congressional power to the states is made clear by *In re Rahrer, supra,* pp. 560–561, and by what we have already said under subdivision 2.

*Judgment affirmed.*

MR. JUSTICE VAN DEVANTER, MR. JUSTICE McREYNOLDS, and MR. JUSTICE STONE concur in the result.