**UNITED STATES v. McDERMOTT.**

No. 8033.

Circuit Court of Appeals, Seventh Circuit.

Nov. 11, 1942.

Rehearing Denied Dec. 8, 1942.
Writ of Certiorari Denied Feb. 15, 1943.

314

Eben Lesh and Joseph H. Lesh, both of Huntington, Ind. (Julius C. Travis, of Indianapolis, Ind., of counsel), for appellant.

B. Howard Caughran, U. S. Atty., of Philadelphia, Pa., Abe L. Hoffman, Sp. Asst. to Atty. Gen., of Chicago, Ill., and Paul A. Pfister and David F. Long, Asst. U. S. Attys., both of Indianapolis, Ind., for appellee.

Before EVANS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a judgment rendered on a verdict of guilty upon an indictment in fourteen counts, nine of which charged the defendant with the fraudulent use of the mails, and five charged the violation of § 7(a) of The Securities Exchange Act of 1934, as amended, 48 Stat. 886–889, 15 U.S.C.A. § 78g, 78h. The first nine counts charged that the defendant devised a scheme and artifice to defraud, for the purpose of obtaining money and property by means of false pretenses, representations, and promises from Marie Langen Sweeney and divers other persons whose names were to the Grand Jurors unknown, and that he unlawfully, wilfully, and feloniously used the United States mail for the purpose of executing said scheme. The last five counts charged that on certain dates the defendant, being a member of the New York Stock Exchange, unlawfully and in contravention of Regulation T of the Federal Reserve Board, extended and maintained credit and arranged for the extension and maintenance of credit in the accounts of certain customers on a designated issued security, then registered on a National Securities Exchange and not then an exempted security within the meaning of the Securities Exchange Act of 1934.

The jury having found the defendant guilty, we are bound to adopt the facts and all favorable inferences reasonably and naturally to be drawn therefrom in the light most favorable to the plaintiff. So viewed, it appears that on and prior to September 26, 1938, the defendant was a partner in a firm doing a brokerage business through the National Securities Exchanges, and that as manager of the firm's Indianapolis, Indiana, office, after gaining the confidence of Mrs. Sweeney, who was unacquainted with business transactions and especially with stocks, bonds and the markets pertaining thereto, he induced her to open a securities account with the firm to buy, sell, and deal in stocks and bonds and to entrust him with certain moneys, stocks and bonds. The account was opened in the fictitious name of "K. K. Kado." Thereafter, in bad faith and in violation of his fiduciary duties, without regard to the market conditions and prices and without regard to the net worth of her account, the limitations of law and the rules of the New York Stock Exchange pertaining thereto, he bought and sold, at her risk,

stocks and bonds and obligated her to pay, to his personal profit, commissions and fees.

About this time one James Allio also had an account with defendant's brokerage firm, in which, by permission of Allio, defendant was allowed to trade. There was no deposit of funds in the account except $556 made before May 1, 1938. That was soon dissipated in losses, and trading was carried on in the account by virtue of a system of buying securities and selling the same securities to pay for their purchase and concealing this by an exchange of checks in substantially equal sums. A witness described this practice as "matching checks," "kiting checks," and "free riding." Allio drew and received all checks going into and coming out of the James Allio account. No check drawn by him payable to defendant's firm could have been paid unless he received a check back from the firm in substantially the same amount, and defendant knew that to be a fact. In March, 1939, the market declined, and on April 7, 1939, this account showed a loss of $11,090.43. Neither Allio nor the defendant could pay the loss. On that day the defendant induced Mrs. Sweeney to give him a number of bonds by telling her the Kado account "needed margin" and she gave him two United States Treasury bonds, 1199K, par value $5,000 and 31022B, par value $10,000. The defendant sold the $10,000 bond for $11,211.12 to Josephthal & Co. and sent it by mail to the purchaser in New York City, New York, and the proceeds were placed to the credit of James Allio. Thus the losses in the Allio account were paid.

By the same mail that the $10,000 bond, numbered 31022B, was sent to New York to be sold, the defendant mailed the $5,000 bond, numbered 1199K. This bond was also sold and the proceeds, $5,599.26, were credited to the account of defendant's wife. April 8, defendant's brokerage firm drew two checks payable to defendant's wife for the proceeds of the sale, one check for $5,000 and the other for $599.29. These checks were endorsed by defendant and deposited in the joint account of the defendant and his wife in a bank at Indianapolis, and the money derived from the sale of the $5,000 bond was used by the defendant to purchase an interest in certain lots in Marion County, Indiana, and to pay defendant's indebtedness to another bank at Indianapolis.

The evidence further disclosed that from October 1, 1938, to May 26, 1939, the Allio account was a general margin account, and that on March 31, 1939, there had been purchased and were in the Allio account securities having a value of $29,679 and that the debit balance was $24,464.16. On that day a check for $8,000 was issued to Allio, leaving him owing $32,464.16, against the cost of securities valued at $29,679. On April 1 there was sold in the account 600 shares of stock for $12,778.23, which left the account owing $19,685.93 and securities in the account having a total market value of $9400. That same day there was purchased in the account 300 shares of Montgomery Ward & Co. preferred stock for $13,926, payment for which was not made except by the sale of the 300 shares of Montgomery Ward & Co. stock on April 5, 1939. Deducting the $9400 value from the debit balance of $19,685.93 left a deficiency in the account, before the purchase of the Montgomery Ward stock, of $10,285.93. There was also evidence tending to prove that the defendant had been frequently cautioned against the violation of "Regulation T."

The defendant denied all of the incriminating evidence and adduced the testimony of a number of witnesses that his reputation as a law abiding citizen was good, and now contends that there was not sufficient evidence to support the verdict. His counsel argues that there is no testimony in the record that the defendant induced Mrs. Sweeney to open and maintain an account; that the last five counts of the indictment are defective and the demurrer thereto should have been sustained. The argument is that the Securities Exchange Act of 1934, as amended, is indefinite and therefore invalid because it amounted to a delegation of legislative power by Congress to the Board of Governors of the Federal Reserve System to define criminal offenses; that the Regulation is indefinite and does not define any offense with sufficient certainty; and that neither of said five counts states facts sufficient to constitute a public offense.

The twelfth count of the indictment charged a violation of §§ 7 and 8 of the Securities Exchange Act of 1934, as amended, §§ 78g and 78h, Title 15 U.S.C.A., and also charged that the defendant, a member of the New York Stock Exchange, extended credit to James Allio in contra-

vention of "Regulation T" of the Federal Reserve Board. The regulation will be found in "Code of F. R., title 12, part 220, p. 115."

To be sure, laws which create crime ought to be so explicit that all men subject to them may know what acts it is their duty to avoid. Before a man can be punished, his case must be plainly and unmistakably within the statute. United States v. Brewer, 139 U.S. 278, 288, 11 S.Ct. 538, 35 L.Ed. 190. Much more does this principle apply to a case where it is sought to prescribe a criminal offense by a regulation, United States v. Eaton, 144 U.S. 677, 687, 12 S.Ct. 764, 36 L.Ed. 591.

The defendant in support of his contentions places reliance upon United States v. L. Cohen Grocery Company, 255 U.S. 81, 41 S.Ct. 298, 300, 65 L.Ed. 516, 14 A.L.R. 1045, and the Eaton case, supra.

In the Cohen Grocery case, § 4 of the Lever Act, c. 80, § 2, 41 Stat. 297, provided that it was unlawful for any person to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries. The Grocery Company was charged with wilfully and feloniously making an unjust and unreasonable rate and charge in handling and dealing in a certain necessary. A mere reading of § 4 of the Lever Act makes it clear that Congress left the question of determining what might be an unjust or unreasonable rate or charge in handling or dealing with necessaries to the court and juries; consequently, the court held the statute void because "the section forbids no specific or definite act."

In the Eaton case, the question was whether a wholesale dealer in oleomargarine, who omits to keep the books or to render the returns prescribed by the regulation, was liable to the penalty prescribed by the Act authorizing the promulgation of the regulation. The statute provided that if any dealer in oleomargarine shall knowingly or wilfully omit any of the "things required by law" [144 U.S. 677, 12 S.Ct. 766, 36 L.Ed. 591] in the carrying on or conducting of his business, if there be no specific penalty or punishment imposed by any other section of this Act for omitting the thing required, he shall pay a penalty of one thousand dollars. The statute did not, however, provide that the omission to keep the books and make the monthly return would constitute an omission or failure to do a "thing required by law," nor did the statute contain any provision making a violation of the regulation a crime. The statute made a crime only the omission or failure to do a "thing required by law." Consequently the court held the regulation void and stated: "It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offense, and we do not think that the statutory authority in the present case is sufficient."

In the instant case the applicable statute § 78g of the Act provides: "(a) For the purpose of preventing the excessive use of credit for the purchase or carrying of securities, the Board of Governors of the Federal Reserve System shall * * * prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security * * * registered on a national securities exchange" and § 78h provides that it shall be unlawful for any member of a national securities exchange to borrow on any security except from certain banks, and except it be in accordance with such rules and regulations as the Federal Reserve System shall prescribe. It thus appears that Congress not only declared a policy, but has laid down certain standards to guide the Board of Governors of the Federal Reserve System in the making and promulgation of rules and regulations to carry out the declared purpose of Congress with reference to the sale of and dealing in securities, making it unlawful for any member of a national securities exchange to violate the rules and regulations promulgated by the Board with respect to the amount of credit initially extended or subsequently maintained on any security, and by § 32 of the Act, 15 U.S. C.A. § 78ff, prescribed the punishment for anyone who violates "any provision of this chapter or any rule or regulation thereunder, the violation of which is made unlawful, or the observance of which is required under the terms of this chapter." And so we believe that this case is not subject to the infirmities of the Cohen Grocery and Eaton cases, supra.

There are no cases upon the question of the validity or invalidity of Regulation T, but cases having to do with the question of lawful delegation by Congress of authority to make and enforce rules and regulations to carry out the declared purpose of

Congress within prescribed standards are numerous.

█ While it is true that it is a cardinal principle of representative government that the legislature cannot delegate the power to make laws to any other body or authority, it is also true that there are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside the halls of legislation, Commonwealth v. Locke, 72 Pa. 491, and Congress, when enacting that navigation be freed from unreasonable obstructions, may. without violating the constitutional prohibition against the delegation of legislative power, impose upon an executive officer the duty of ascertaining what particular cases come within the prescribed rule, Union Bridge Company v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523, may leave the details of the regulation to the head of an executive department, McKinley v. United States, 249 U.S. 397, 399, 39 S.Ct. 324, 63 L.Ed. 668, and make the violation of rules and regulations of a commission, a crime, Avent v. United States, 266 U.S. 127, 131, 45 S.Ct. 34, 69 L.Ed. 202.

█ In Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441, the court sustained the validity of a rule or regulation promulgated by the Secretary of Agriculture under the authority of the Tobacco Inspection Act of August 23, 1935, 49 Stat. 731, 7 U.S.C.A. § 511 et seq., authorizing the Secretary to establish standards of tobacco and designate auction markets where tobacco bought and sold moves in interstate commerce, and providing under penalty that at a market so designated no tobacco shall be offered for sale at auction until it has been inspected by an authorized representative of the Secretary according to such standards. In holding that the regulation did not result from an unconstitutional delegation of legislative power, the court said at page 15 of 306 U.S., at page 387 of 59 S.Ct.: "We have always recognized that legislation must often be adapted to conditions involving details with which it is impracticable for the legislature to deal directly. We have said that—'The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply. Without capacity to give authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility'. * * * In such cases 'a general provision may be made, and power given to those who are to act under such general provisions, to fill up the details.'"

█ We conclude that there is no merit in the contention that there was an unconstitutional delegation of legislative power; that the regulation is indefinite; and that the five counts failed to state facts sufficient to constitute a public offense.

█ Concerning defendant's contention questioning the sufficiency of evidence to sustain the verdict, it will be enough to say that from our analysis of the evidence we are convinced there was substantial evidence warranting submission of the case to the jury and that where the established facts and inescapable inferences are inconsistent with the defendant's professions of innocence, it becomes the problem of the jury to weigh the evidence and determine the guilt or innocence of the defendant, United States v. Morley, 7 Cir., 99 F.2d 683, 685. This the jury has done, and we are bound by the verdict.

█ Since we have indicated that the evidence was sufficient under the first and twelfth counts of the indictment, and as the penalty imposed was not more than could have been imposed under the first count, § 215, 18 U.S.C.A. § 338, if it stood alone, we need not consider the other counts of the indictment for the reason that there could be no reversal even though there was insufficient evidence to sustain a conviction upon the counts not discussed. Whitfield v. State of Ohio, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778, and Roberts v. United States, 8 Cir., 96 F.2d 39.

The defendant in his brief has raised other points which we have considered, but we are convinced they are without merit and do not change the conclusions we have reached.

For the reasons assigned, the judgment of the District Court is affirmed.

Judgment affirmed.