**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hyman LEBMAN, Defendant-Appellant.**

**No. 71–2281.**

United States Court of Appeals,
Fifth Circuit.

June 2, 1972.

Rehearing Denied July 5, 1972.

Clark, Circuit Judge, concurred specially and filed opinion.

Joel W. Westbrook, Sheehy, Cureton, Westbrook, Lovelace & Nielsen, Waco, Tex., for defendant-appellant.

Seagal V. Wheatley, former U. S. Atty., Reese L. Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., Harry H. Ellis, Dallas, Tex., William S. Sessions, U. S. Atty., San Antonio, Tex., James F. Gaulding, Asst. Regional Counsel, I. R. S., Dallas, Tex., for plaintiff-appellee.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

Hyman Lebman appeals from his judgment of conviction entered upon a guilty plea to three counts of violations of 18 U.S.C. §§ 922(b) (3), 922(b) (5), and 922(m), provisions of the Gun Control Act of 1968. We affirm.

On September 11, 1970, a federal grand jury returned an indictment against Lebman and two others charging seventeen counts of violations of Chapter 44, title 18, United States Code, 18 U.S.C. §§ 921–928, and one count of conspiracy, 18 U.S.C. § 371. Lebman was named in the first ten substantive counts and in the conspiracy count. Lebman entered a guilty plea on the first three substantive counts. The counts, all arising from the same transaction, charged Lebman with (1) aiding and abetting a licensed firearm dealer to sell and deliver a firearm "to a person not residing in the State of Texas whom he then and there knew and had reasonable cause to believe did not reside in the State of Texas, where such licensed firearms business was located, in violation of Section 922(b) (3), title 18, United States Code,[1] (2) aiding and abetting a licensed firearm dealer to sell and deliver a firearm "to a purchaser and to fail to note in records required to be kept pursuant to 18 U.S.C. § 923, the name, age, and place of residence of such purchaser, in violation of Section 922(b) (5), title 18, United States Code",[2] and (3) aiding and abetting a licensed firearm dealer "to make a false entry in records kept pursuant to Section 923, Title 18, United States Code, and regulations promulgated thereunder . . . in violation of Section 922(m), title 18, United States Code".[3] Lebman's guilty plea was accepted and a judgment of conviction entered. After entry of the conviction, but prior to sentencing, Lebman filed a "Motion in Arrest of Judgment" urging grounds similar to those raised on this appeal. The motion was denied, and Lebman received a fine of five hundred dollars and a sentence of twelve months on each count to run concurrently. The sentences were suspended, and Lebman was placed on five years' unsupervised probation.

On appeal, Lebman challenges the constitutionality of the statutory provisions

1. 18 U.S.C. § 922(b) (3) provides:

It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

· · · · ·

(3) any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the licensee's place of business is located, except that this paragraph (A) shall not apply to [exceptions not here relevant].

2. 18 U.S.C. § 922(b) (5) provides:

It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

· · · · ·

(5) any firearm or ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

3. 18 U.S.C. § 922(m) provides:

(m) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.

under which he was convicted. He argues, first, that 18 U.S.C. §§ 922(b) (3), 922(b) (5), and 922(m) (see footnotes 1-3) are not supported by the commerce power of Congress in that the statutes do not require the proscribed conduct to have any relation to interstate commerce. Stated otherwise, Lebman contends that Congress may not, by criminal sanctions, regulate this intrastate transaction.

Lebman is, however, incorrect in his assertion that the power of Congress to regulate commerce under Article I, Section 8, of the Constitution does not extend to intrastate transactions. "[I]f it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze". United States v. Women's Sportswear Mfrs. Ass'n., 1949, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805, 811.

The power of Congress over interstate commerce is not confined to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce. See M'Culloch v. Maryland, 4 Wheat. 316, 421, 4 L.Ed. 579. Cf. United States v. Ferger, 250 U.S. 199, 39 S. Ct. 445, 63 L.Ed. 936. United States v. Darby, 1941, 312 U.S. 100, 118, 61 S.Ct. 451, 459, 85 L.Ed. 609, 619. See Gibbons v. Ogden, 1824, 9 Wheat. 1, 22 U.S. 1, 6 L.Ed. 23; National Labor Relations Bd. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122; Heart of Atlanta Motel v. United States, 1964, 379 U.S. 241, 85 S. Ct. 348, 13 L.Ed.2d 258.

■ Congress, in conjunction with the passage of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968,[4] made detailed findings as to the effect of the proscribed intrastate conduct on interstate commerce.[5] These

---

4. Chapter 44, title 18, United States Code, was added by title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351. Title IV was approved on June 19, 1968, and was to become effective on December 16, 1968. The Congressional findings as to the effect on interstate commerce of the proscribed conduct were contained in § 901(a) of title IV (see footnote 5). Prior to the effective date of title IV, on October 22, 1968, Congress approved the Gun Control Act of 1968, Pub.L. 90–618. Title I of that Act, effective, October 22, 1968, amended Chapter 44, title 18 before its effective date. The Congressional findings contained in § 901 (a) were deleted as "unnecessary", by title I. See 3 U.S.Code Cong. & Admin. News, p. 4410 (1968). The Congressional findings, although deleted by the amendments of title I, are relevant in assessing the constitutionality of the statutory provisions at issue in the present case. The findings apply with equal force to the statutory scheme as amended by title I as they did to the unamended version in title IV.

5. Section 901(a) of title IV of the Omnibus Crime Control and Safe Streets Act of 1968 (see footnote 4) provides:

(a) The Congress hereby finds and declares—

(1) that there is a widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce, and that the existing Federal controls over such traffic do not adequately enable the States to control this traffic within their own borders through the exercise of their police power;

(2) that the ease with which any person can acquire firearms other than a rifle or shotgun (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotics addicts, mental defectives, armed groups who would supplant the functions of duly constituted public authorities, and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States;

(3) that only through adequate Federal control over interstate and foreign

findings, when examined against the evidentiary background upon which they were based,[6] convince us that Congress intended to and had the authority, under its commerce power, to regulate the intrastate transactions at issue here. *See* Perez v. United States, 1971, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686; Heart of Atlanta Motel v. United States, 1964, 379 U.S. 241, 85 S.Ct. 348, 13 L.

Ed.2d 258.[7] Lebman seeks to rely on United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (December 21, 1971) as authority for his argument that Congress was acting beyond its commerce power if it sought, by the statutory provisions at issue here, to regulate intrastate transactions. In *Bass,* the defendant was convicted of possessing a firearm in violation of 18

commerce in these weapons, and over all persons engaging in the business of importing, manufacturing, or dealing in them, can this grave problem be properly dealt with, and effective State and local regulation of this traffic be made possible;

(4) that the acquisition on a mail-order basis of firearms other than a rifle or shotgun by nonlicensed individuals, from a place other than their State of residence, has materially tended to thwart the effectiveness of State laws and regulations, and local ordinances;

(5) that the sale or other disposition of concealable weapons by importers, manufacturers, and dealers holding Federal licenses, to nonresidents of the State in which the licensees' places of business are located, has tended to make ineffective the laws, regulations, and ordinances in the several States and local jurisdictions regarding such firearms;

(6) that there is a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior, and that such firearms have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior;

(7) that the United States has become the dumping ground of the cast-off surplus military weapons of other nations, and that such weapons, and the large volume of relatively inexpensive pistols and revolvers (largely worthless for sporting purposes), imported into the United States in recent years, has contributed greatly to lawlessness and to the Nation's law enforcement problems;

(8) that the lack of adequate Federal control over interstate and foreign commerce in highly destructive weapons (such as bazookas, mortars, anti-tank guns, and so forth, and destructive devices such as explosive or incendiary grenades, bombs, missiles, and

so forth) has allowed such weapons and devices to fall into the hands of lawless persons, including armed groups who would supplant lawful authority, thus creating a problem of national concern;

(9) that the existing licensing system under the Federal Firearms Act does not provide adequate license fees or proper standards for the granting or denial of licenses, and that this has led to licenses being issued to persons not reasonably entitled thereto, thus distorting the purposes of the licensing system.

(b) The Congress further hereby declares that the purpose of this title is to cope with the conditions referred to in the foregoing subsection, and that it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trap shooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title.

1 U.S.Code Cong. & Admin.News, pp. 270–271 (1968).

6. *See* U.S.Code Cong. & Admin.News, pp. 2112–2309 (1968); 3 U.S.Code Cong. & Admin.News, pp. 4410–4435.

7. Because, as we have held, Congress could constitutionally regulate an intrastate transaction under 18 U.S.C. §§ 922(b)(3), 922(b)(5), and 922(m), Lebman's contention that the indictment was constitutionally defective, in that it failed to allege a relationship between the proscribed transaction and interstate commerce, must fail.

U.S.C. § 1202(a) (App.) [8] He argued that Section 1202(a) required that he possess a firearm "in commerce or affecting commerce". The Court, after concluding that "the statutory materials are inconclusive on the central issue of whether or not the statutory phrase 'in commerce or affecting commerce' applies to 'possesses' and 'receives' as well as 'transports' 92 S.Ct. at 522, adopted the narrower reading of the statute—"the phrase 'in commerce or affecting commerce' is part of all three offenses, and the present conviction must be set aside because the Government has failed to show the requisite nexus with interstate commerce". 92 S.Ct. at 522.

In United States v. Nelson, 5 Cir. 1971, 458 F.2d 556, this Court, in a case dealing with the constitutionality of 18 U.S.C. § 922(a) (6),[9] distinguished *Bass* with language equally applicable to the statutory provisions at issue in the present case.

The instant case differs from *Bass* in several respects. First, appellant was convicted under 18 U.S.C.A. § 922(a) (6) [see footnote 9], which, in contrast with § 1202(a) (1) that was at issue in *Bass,* contains no language referring to interstate commerce. The statute is thus not ambiguous on its face, unlike § 1202(a) (1). Secondly, § 922 is part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968. The legislative history of this Title is fairly extensive and convinces us that · Congress intended to reach appellant's conduct irrespective of its immediate nexus with commerce. The statutory provisions facing the Supreme Court in *Bass* is part of Title VII of the same act. The legislative history of Title VII is, as noted by the Court in *Bass,* virtually nonexistent. The Court was, therefore, left with only minimal legislative guidance. Thirdly, the Congressional Declaration of Purpose set out in § 901 of the Omnibus Crime Act clearly indicates Congress' purpose to regulate the acquisition of firearms by felons without regard to the nexus of each individual acquisition with interstate commerce. * * *

It seems clear from the language of § 922(a) (6), from its legislative history, and from the declaration of Congressional purpose that Congress meant to regulate all sales of the types of firearms covered by the Omnibus Crime Act, not just those sales in which the Government can prove some specific connection with interstate commerce. * * *

Moreover, we believe that acquisition of firearms is more closely related to interstate commerce than mere

8. (a) Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
   (2) has been discharged from the Armed Forces under dishonorable conditions, or
   (3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or
   (4) having been a citizen of the United States has renounced his citizenship, or
   (5) being an alien is illegally or unlawfully in the United States,
   and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined

not more than $10,000 or imprisoned for not more than two years, or both. 18 U.S.C. (App.) § 1202(a) (Supp. V 1970).

9. (a) It shall be unlawful—(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter. 18 U.S.C. § 922(a) (6).

possession. Therefore, while the Supreme Court in *Bass* impliedly expressed some reservations about Congress' power to regulate possession of firearms, we entertain no doubt that it has the power to regulate their acquisition without requiring proof of a nexus with interstate commerce in each individual case.

*See also* United States v. Menna, 9 Cir. 1971, 451 F.2d 982. As in *Nelson,* §§ 922(b) (3), 922(b) (5), and 922(m), unlike § 1202(a), are unambiguous on their face, in that they contain no reference to interstate commerce, and are accompanied by legislative history and a statement of purpose [10] and findings indicating a desire to reach intrastate transactions.[11] The statutory interpretation of an ambiguous statute in *Bass* does not preclude the result we reach in the present case.[12]

Assuming that Congress, as we have held, could constitutionally enact the challenged statutes under the commerce power and intended to reach intrastate transactions under the statutes, Lebman argues that Section 922(b) (3) (see footnote 1), the basis of count one, is constitutionally defective in other respects. Lebman argues that the statute unconstitutionally inhibits the non-resident firearms purchaser's right to travel. *See* Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.[13] Assuming, but not deciding, that

10. The principal purpose of H.R. 17735, as amended, is to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders.
3 U.S.Code Cong. & Admin.News, p. 4411 (1968).

11. As to the power of Congress to enact § 922(a) (6), we said in *Nelson*:
Congress may undoubtedly impose criminal sanctions on conduct that is ostensibly intrastate. Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) (loan-sharking). We believe that the acquisition of firearms by convicted felons and persons under indictment for felonies, although arguably intrastate activity, imposes a sufficient burden upon interstate commerce to be a proper subject for federal regulation. *See* U.S. Code Cong. and Admin.News 1968, pp. 2163–66. If Congress is to effectively prevent the interstate use of guns for illegal purposes it must control their sources: manufacturers, dealers, and importers. That is what it sought to do in § 922.

12. Lebman seeks to distinguish *Nelson* because the crime involved in that case imposes a greater burden on interstate commerce than the crime involved in the present case. Assuming, arguendo, that this is true, we still believe that the Congressional findings relevant to the statutory provisions at issue in the present case justify Congressional action under the commerce power.
Lebman's reliance on Rewis v. United States, 1971, 401 U.S. 808, 91 S.Ct. 1056,

28 L.Ed.2d 493, is similarly misplaced. In *Rewis*, as in *Bass*, the Supreme Court opted for a narrow interpretation of 18 U.S.C. § 1952 because "neither statutory language nor legislative history supports . . . a broad-ranging interpretation of § 1952." 401 U.S. at 812, 91 S.Ct. at 1059.

13. In *Shapiro*, the Supreme Court said, "[W]e have no occasion to ascribe the source of this right to travel interstate to a particular constitutional provision". 394 U.S. at 630, 89 S.Ct. at 1329. In a footnote, the Court noted that the right to travel was grounded, in previous cases, on the Privileges and Immunities Clause of Article III, Section 2, the Privileges and Immunities Clause of the Fourteenth Amendment, and the Due Process Clause of the Fifth Amendment. 394 U.S. at 630 fn. 8, 89 S.Ct. 1322. The Privileges and Immunities Clause of the Fourteenth Amendment applies, by its terms, to the states, and, as a result, is not relevant here. The Privileges and Immunities Clause of Article IV is likewise a limitation upon the states. *See* Slaughter-House Cases, 1873, 83 U.S.(16 Wall) 36, 21 L.Ed. 394; Chambers v. Baltimore & Ohio R. R., 1907, 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143; Whitfield v. Ohio, 1936, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778; Toomer v. Witsell, 1948, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460. In *Shapiro*, the Court relied on the Due Process Clause of the Fifth Amendment to strike down the District of Columbia waiting-period requirement "even though it was adopted by Congress as an exercise of federal power". 394 U.S. at 641, 89 S.Ct. at

Lebman has standing to raise the constitutional objection of a non-resident firearms purchaser, his argument must, nevertheless, fail. We are unable to discern any inhibition on the non-resident firearms purchaser's right to travel occasioned by a statute regulating the sale of firearms to a non-resident by a licensed dealer. Nor do we find that the distinction in Section 922(b) (3) between residents and non-residents is "wholly irrelevant to the achievement of [Congress's] . . . objective". McGowan v. Maryland, 1961, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399. This is particularly true in light of the explicit Congressional finding that "the sale or other disposition of concealable weapons . . . to nonresidents of the State in which the licensees' places of business are located, has tended to make ineffective the laws, regulations, and ordinances in the several States and local jurisdictions regarding such firearms". (*See* footnote 5).

■ Lebman also argues that Section 922(b) (3) is unconstitutionally vague and indefinite in that it employs the scienter requirement "knows or has reasonable cause to believe". Again assuming, but not deciding, that Lebman possesses the requisite standing to raise this contention on appeal, it was charged under the indictment, and a guilty plea was entered, that Lebman "knowingly and unlawfully did aid and abet and *wilfully cause* a firearms dealer . . . to sell and deliver a firearm . . . to a person not residing in the State of Texas whom he then and there knew *and* had reasonable cause to believe did not reside in the State of Texas. . . ." Lebman has no grounds to complain of this scienter standard under which he was charged and plead guilty. He was charged and convicted under an admittedly acceptable scienter standard providing that he "knew" the facts specified in the statute. He cannot complain

when the Government chose to *add* to this acceptable scienter standard the challenged "reasonable cause to believe" standard. We, therefore, need not and do not decide the propriety of an indictment and conviction under the "knows *or* has reasonable cause to believe" standard.

We have carefully examined Lebman's other arguments on appeal and find them without merit.

Affirmed.

CLARK, Circuit Judge (concurring specially).

I concur in all of Judge Wisdom's opinion except the penultimate paragraph.

Under this circuit's holding in United States v. Jacobs, 451 F.2d 530 (5th Cir. 1971), the conjunctive indictment did not increase the government's burden under the disjunctive statute to prove more than that Lebman had "reasonable cause to believe" that the person to whom he sold firearms was a nonresident of Texas. For this reason I would hold that Lebman possesses the requisite standing to mount a constitutional attack on this proviso of the act. However, I would hold the proviso to be sufficiently clear and definite to pass constitutional muster. The statute's coverage of dealers who "know" the purchaser is a non-resident is really not attacked, and rightly so. The precision of this requirement is beyond cavil. The alternative incrimination of those who have "reasonable cause to believe" he to whom they sell is a nonresident does not, in the language of the Supreme Court, fail to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute, United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1953), nor does it encourage arbitrary and erratic arrests and convictions. Papachristou v.

---

1335. Lebman apparently relies on the Due Process Clause of the Fifth Amendment and its "incorporated" equal protection requirements, *see* Bolling v.

Sharpe, 1954, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884, as the basis for his "right to travel" challenge.

Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The statute unmistakably forbids only a sale by one who though he is "in some manner aware" that the buyer is a nonresident, nevertheless completes a knowing, "calculated" sale. *See* Ginsberg v. State of New York, 390 U.S. 629, 643–644, 88 S.Ct. 1274, 1283, 20 L.Ed.2d 195 (1968). Under this circuit's recent decision in United States v. Featherston, 461 F.2d 1119 (5th Cir. 1972), the challenged scienter requirement did not expose Lebman to prosecution without first fairly warning him of the nature of the proscribed conduct. *See,* Rowan v. U. S. Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). *See also* United States v. Decker, 446 F.2d 164 (8th Cir. 1971).