**UNITED STATES of America**

v.

**Harold E. PRAY.**

**Crim. No. 78–20.**

United States District Court, M. D. Pennsylvania.

May 30, 1978.

As Amended Aug. 18, 1978.

Joesph F. Cimini, Lewisburg, Pa., for plaintiff.

Clifford A. Rieders, Stuart, Murphy, Smith, Mussina, Harris & Rieders, Williamsport, Pa., for defendant.

## OPINION

MUIR, District Judge.

On March 16, 1978, a 14-count indictment was handed down charging Pray with violations of 15 U.S.C. §§ 78h(b) & 78j(b), 17 C.F.R. § 240.8c–1 and 240.10b–5, and 18 U.S.C. §§ 2, 1341, 1961, 1962(c), 1963 & 2314. On April 11, 1978, Pray filed a motion for the extension of the time period set forth in ¶ 3.6 of the Order of this Court dated March 20, 1978 which governs the filing of briefs in support of pre-trial motions. On April 12, 1978, the Court granted Pray's motion and directed that if he filed pre-trial motions, his supporting brief would be due within 15 days of the date of the filing of the motion rather than the time set forth in the practice order. On the same day, Pray filed a motion pursuant to F.R.Crim.P. 12(b) to dismiss the indictment or for such other relief as the Court deems appropriate. On May 1, 1978, Pray filed his brief in support of that motion. The United States filed a responsive brief on May 11, 1978. Pray filed a reply brief on May 15, 1978.

Pray's brief in support of his motion to dismiss the indictment should have been filed on or before April 27, 1978 according to this Court's order issued on April 12, 1978. The brief was filed two days late. The United States correctly asserts that according to ¶ 3.6 of the Order of this Court dated March 20, 1978 in the above-captioned case the Court has the authority to deny the motion. The Government has requested, however, that the motion be considered on the merits and has addressed all of Pray's contentions in its brief. Because the brief-ing on the motion to dismiss the indictment has been completed, the Court will reluctantly consider the motion. However, the Court is disturbed by counsel's late filing of his supporting brief.

The indictment returned by the grand jury in this case charges Pray with the following violations of federal law. Count 1 alleges that Pray, a securities broker-dealer doing business in Lewisburg, Pennsylvania and a member of the National Association of Securities Dealers, engaged in a pattern of fraudulent conduct through which he obtained money from his customers purportedly for investment in securities but which in fact was converted to Pray's own use, that from time to time he mailed his customers checks supposedly representing interest or dividends on their investment when in fact such checks were mailed in order to conceal the fact that he had converted their money to his own use, that he sent letters authorizing the liquidation of certain mutual fund holdings belonging to one of his customers without the knowledge and consent of the customer, that he diverted the proceeds of such sales to his own use, and that he concealed the transactions from his customers. Count 1 then states that in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 (hereafter Rule 10b–5) Pray received $75,000 from Phoebe J. Yeager, invested $50,008.51 of that sum in securities, converted the remainder to his own use, and mailed a letter to Mrs. Yeager containing a check for $1,000.00 in furtherance of his scheme to defraud her. Count 2 alleges that Pray received $26,000 from Harry R. Garvin for the purpose of purchasing securities and converted the entire sum to his own use and that he sent two checks to Mr. Garvin purportedly representing interest on Mr. Garvin's investment. Count 3 alleges that on January 6, 1976, Pray by letter authorized the sale of 3,000 shares of Decatur Fund Securities belonging to Adelaide M. Hill, one of his customers, without her knowledge and consent. Count 4 alleges that the mailing of the letter which was part of the scheme to defraud Mrs. Hill set forth in Count 3 violated the mail fraud

statute, 18 U.S.C. § 1341. Count 5 alleges that Pray caused the check for $30,000 representing the proceeds of the sale of Mrs. Hill's stock to be placed in the mail, knowing the same to have been stolen, converted, or taken by fraud. Count 6 alleges that on September 20, 1976, Pray authorized the sale of 1264.755 shares of Mrs. Hill's Decatur Fund securities by letter without her consent. Count 7 sets forth the mailing of the letter which authorized the sale of the stock and Count 8 charges Pray with causing the transportation of a check representing the proceeds of the sale which he knew had been obtained by fraud. Count 9 alleges that on December 2, 1976, Pray caused the sale of two other blocks of Mrs. Hill's stock by letter without her knowledge and consent. Counts 10 and 11 charge Pray with the transportation of two different checks representing the proceeds of that sale which Pray knew had been obtained by fraud. Counts 12 and 13 charge Pray with the hypothecation of securities belonging to two of his customers, Carl D. Hockenbury and Carl D. Bitler, Jr. Count 14 alleges that the violations set forth in Counts 1 through 13 constitute a pattern of racketeering activity which is proscribed by 18 U.S.C. §§ 1961, 1962 & 1963.

Pray raises several objections to the indictment. He claims that counts 1, 2, 4, 6, 7, 9, 12, and 13 fail to specify that Pray engaged in conduct and violation of federal law. Pray also asserts that Counts 1 through 4, 6, 7, and 9 are barred by the statute of limitations and that those counts, together with counts 12 and 13 are barred because of earlier civil proceedings involving the same transactions. Pray asserts that the securities laws, specifically 15 U.S.C. §§ 78h(b) & 78j(b) and 17 C.F.R. §§ 240.8c & 240.10b–5 define criminal conduct too broadly and that they contain an improper delegation of Congress's authority to an administrative agency. Pray also asserts that the entire indictment should be dismissed because the testimony presented to the grand jury was hearsay and he contends that certain counts of the indictment are duplicative and cannot legally be set forth in separate counts. The Court will deal with Pray's contentions *seriatim.*

■ Pray claims that certain counts of the indictment do not set forth criminal conduct with the required specificity. An indictment is sufficient to withstand such a challenge so long as it both contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Pray states that although Count 1 is sufficient to apprise him of the charges, the facts as set forth in that Count do not state an offense under federal law. He objects to Count 2 on the same grounds. It is the Court's view that both counts 1 and 2 do set forth a cause of action under the applicable federal statutes.

Count 1 charges that Pray's actions violated 15 U.S.C. § 78j(b) and Rule 10b–5. The former section provides that it is unlawful for any person by the use of the mails to employ any manipulative or deceptive device in connection with the purchase or sale of any security in contravention of rules and regulations prescribed by the Securities Exchange Commission. Rule 10b–5(c) prohibits any person from engaging in an act of business which operates as a fraud upon any other person in connection with the purchase or sale of any security. Pray contends that counts 1 and 2 which allege the receipt of money from his customers for the purchase of securities and conversion of all or a portion of that money to his own use, followed by the mailing of sums of money which were represented to be dividends earned on the investment are insufficient because the first act, converting moneys for his own use, may constitute a fraud but has no connection with either the mails or interstate commerce, and that the second act, the mailing of the checks, constitutes the use of the mails but has no relation to either the purchase or sale of securities. Therefore, Pray argues that a violation of the securities law has not been set forth.

■ It is clear that at least in the context of a civil action brought to enforce

§ 78j(b) and Rule 10b–5 the deceptive or manipulative practice must be "in connection with" the purchase or sale of any securities. The Supreme Court has held that persons who neither purchased nor sold securities have no standing to maintain a private cause of action for money damages under Rule 10b–5 even if a fraudulent practice, such as concealing the favorable terms of a merger in order to induce such persons not to purchase securities, has been employed by the Defendants. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). *See also Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The *Blue Chip-Birnbaum* standing rule is not applicable in this case, however, because the money procured by Mr. Pray was intended by the customer to be used in the purchase of securities. Pray's contention is only that the mailing of checks to Mrs. Yeager and Mr. Garvin was neither a purchase nor a sale of securities. However, it is not necessary that the mailings themselves, which serve primarily to confer jurisdiction upon the federal court, constitute a sale or purchase of securities in and of themselves but only that the mailings be part of a general scheme to defraud which has a connection with the sale or purchase of securities. The Courts have recognized that an entire scheme to defraud may include the mailing of so-called "lulling" letters such as the ones allegedly mailed by Pray in this case which conceal the fraudulent device from the person against whom it is utilized. *See, e. g., United States v. Pollack,* 175 U.S.App. D.C. 227, 235, 534 F.2d 964, 972 & n. 6 (1976). All that need be shown is that the mails have been used in furtherance of the alleged fraud and there is no requirement that any fraudulent representation inducing a sale or purchase of securities be by way of the mails so long as the requisite connection between a scheme to defraud and the use of the mails is made out. *See Rude v. Campbell Square, Inc.,* 411 F.Supp. 1040 (D.S.D. 1976); *see also Boone v. Baugh,* 308 F.2d 711 (8th Cir. 1962). Therefore, counts 1 and 2 do set forth a violation of the securities laws over which this Court has jurisdiction.

▪ Pray next claims that counts 4 and 7 are deficient and that no specific conduct is alleged in either count with respect to any individual so that the count does not apprise Pray of the charges against him. However, he concedes that the defect can be cured by a bill of particulars. A bill of particulars may be directed to be filed by the Government in the discretion of the Court if the indictment itself is not adequate to inform the defendant of the nature of the charges brought against him and if it is necessary to enable him adequately to prepare his defense. *United States v. Addonizio,* 451 F.2d 49, 63–64 (3d Cir. 1972). It is the view of the Court that a bill of particulars is not required in this case because the indictment is not defective. Count 4 alleges that on January 6, 1976, Pray mailed a letter to the Delaware Management Company in Philadelphia in furtherance of the scheme set forth in Paragraphs 1 through 5 of Count 1. The letter clearly is the same one referred to in Count 3 which authorized the Delaware Management Company to liquidate securities belonging to one of Pray's customers, Adelaide M. Hill. Count 4 differs from Count 3 in that it alleges a violation of the mail fraud statute, 18 U.S.C. § 1341, rather than of the securities laws. Similarly, count 7 alleges that on September 20, 1976, Pray mailed another letter to the Delaware Management Corporation of Philadelphia. This letter is the same one referred to in Count 6 which authorized the sale of two other blocks of securities belonging to Mrs. Hill. Counts 4 and 7, therefore, are sufficient to apprise Pray of the charges against him and to enable him to prepare an adequate defense. Therefore, the Court will not direct that a bill of particulars be filed on each count.

▪ Pray asserts that Counts 6 and 9 which allege that Pray caused sales of a customer's securities without her consent are deficient because although they apprise Pray of the charges against him they constitute only simple theft rather than a fraud or manipulative device which violates

the federal securities laws. Fraud as defined by the securities statute is not limited to the common law elements of deceit. *Kubik v. Goldfield,* 479 F.2d 472, 476 n. 6 (3d Cir. 1973). Any practice or course of business which operates as a fraud violates § 78j(b). *See Blackie v. Barrack,* 524 F.2d 891, 903 n. 19 (9th Cir. 1975). It is the Court's view that the unauthorized liquidation of a customer's mutual fund holdings without that customer's knowledge or consent by use of the mails constitutes a practice or course of business which is sufficiently fraudulent to state a violation of federal law. Therefore, counts 6 and 9 do set forth a violation of the securities laws.

Pray also contends that his prosecution is barred both because the statute of limitations has run with respect to. certain counts of the indictment and that earlier civil proceedings involving the same alleged scheme to defraud have been conducted. However, Pray briefed neither of these contentions. Rather, he has requested the Court to leave the contentions open until evidence is produced at trial. The Government contends that because Pray failed to brief the points, they should be dismissed. In his reply brief, Pray argues that dismissal of the issues is inappropriate because briefing at this point is impossible without the disclosure of further evidence and that he should not be deemed to have waived the issues by failing to brief them.

F.R.Crim.P. 12(b) states that any defense which is capable of determination without the trial of the general issue may be raised before the trial by motion and Rule 12(f) states that failure to raise those defenses constitutes waiver. It may be that defense counsel could make a showing that two defenses which he raises, the statute of limitations and the earlier civil proceeding, are not capable of determination without the trial of the general issue so that the defenses need not be raised prior to trial. In addition, there is authority to support the proposition that the defense of the statute of limitations may be raised at the trial stage. *See Askins v. United States,* 102 U.S.App.D.C. 198, 202, 251 F.2d 909, 913 & n. 6 (1958). If either of the defenses relate to the jurisdiction of the Court, they may be raised at any time. It is the view of the Court that Pray's failure to brief the issues, however, necessitates the dismissal of his claims at this time. The dismissal is without prejudice to Pray's right to raise those claims at a later time assuming that whenever they are raised they are timely.

Pray next alleges that the securities laws are deficient because the provisions relied upon by the Government, 15 U.S.C. § 78j(b) and 78h(b), are too broad in their remedial provisions with respect to defining a criminal offense. Pray claims that although such broad remedial provisions may be permissible in the context of civil liability, criminal activity must be more narrowly proscribed. Assuming, however, that the rules promulgated by the Securities and Exchange Commission (SEC) under the statutes, Rule 10b–5 and 17 C.F.R. § 240.8c–1, define the prohibited activity with the required specificity, Pray argues that Congress rather than the SEC has the responsibility of defining criminal conduct and that it would be improper for Congress to delegate that responsibility to an administrative agency. Pray raises this objection with respect to counts 1 through 3, 6, 9, 12 and 13, all of which set forth violations of the securities laws, as well as Counts 4 and 7 which allege a violation of 18 U.S.C. § 1341, the mail fraud statute. Pray did not brief the latter contention, namely that the mail fraud statute, to the extent that it relates to securities laws violations, is unconstitutional, and the Court will deem that that contention has been withdrawn.

Pray is in essence making a two-step attack on the securities laws. He argues first that the laws without reference to any regulations promulgated thereunder are too vague so that a person convicted of a violation thereof is not sufficiently apprised that his conduct was in violation of the law. If the administrative regulations cure the vagueness of the securities laws, however, Pray contends that in that event there has been an unlawful delegation of Congress's power to regulate criminal activity. The

Court will consider first whether the securities laws are unconstitutionally vague.

 A criminal statute is insufficient if it is so vague that it either fails to afford fair warning to persons prosecuted under the statute that the conduct for which they could be convicted had been made a crime, see *Bouie v. City of Columbia*, 378 U.S. 347, 349, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), or that it contains no standard of conduct at all. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Fair warning is not afforded to a criminal defendant if the statute under which he has been charged would require persons of ordinary intelligence to guess at its meaning and to differ as to its application. *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). However, even if a statute is imprecise, a person who is given fair warning that his conduct is criminal in nature has no standing to complain that other persons who engage in a different course of conduct may not constitutionally be prosecuted under that statute. *Parker v. Levy*, 417 U.S. 733, 755–56, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Therefore, the Court need not consider whether 15 U.S.C. § 78j(b) is vague on its face if it provided fair notice to Pray that the conduct in which he engaged was a federal crime.

 15 U.S.C. § 78j(b) prohibits the use of a deceptive device in connection with the purchase or sale of a security in contravention of the rules which the SEC prescribes. Pray's conduct clearly was related to the purchase or sale of securities and involved the use of deception on his customers. Rule 10b–5 is the regulation prescribed by the commission referred to in § 78j(b) and it prohibits any person from engaging in an act or course of business which operates as fraud or deceit upon any person in connection with the purchase or sale of any security. Although some courses of conduct may be so close to the perimeter of the acts proscribed by § 78j(b) and Rule 10b–5 that it would be unconstitutional to prosecute persons committing those acts, it is the view of the Court that the language of the statute and the Rule are sufficient to apprise Pray or any other person of ordinary intelligence that the obtaining of money from the customers of a securities dealer purportedly for purposes of investment followed by the conversion of all or a portion of the funds to the dealer's own use operates as a deceit upon a customer in connection with a purchase or sale of a security so that it constitutes a criminal act. The Court's decision is in complete agreement with the holding in *United States v. Persky*, 520 F.2d 283 (2d Cir. 1975) which held that the general terms of Rule 10b–5, although not completely free of ambiguity or indefiniteness, are as clear as such terms as malice, probable cause, self-defense, and negligence which must be interpreted in accordance with the facts of a particular case. The United States Court of Appeals for the Third Circuit has cited *Persky* with approval as standing for the proposition that neither § 78j(b) nor Rule 10b–5 are unconstitutionally vague. *See Todd & Co. v. Securities & Exchange Comm'n*, 557 F.2d 1008, 1013 (3d Cir. 1977).

Both *United States v. Persky*, 520 F.2d 283 (2d Cir. 1957) and *Todd & Co. v. Securities & Exchange Comm'n*, 557 F.2d 1008 (3d Cir. 1977) assume, however, that § 78j(b) must be read together with Rule 10b–5 in order to define criminal conduct. Pray also claims that allowing the SEC to set forth standards of criminal conduct by way of administrative regulation is an unconstitutional delegation of Congress's powers. It is necessary to reach Pray's delegation argument because although § 78j(b) prohibits the use of a deceptive device in connection with the purchase or sale of securities, the prohibition is explicitly tied to rules and regulations proscribed by the Securities and Exchange Commission as necessary or appropriate in the public interest or for the protection of investors. Therefore, § 78j(b) by itself, without reference to administrative regulations, does not prohibit any act.

 Not all delegations of legislative authority are prohibited by the Constitution. Congress is empowered to invest ad-

ministrative agencies with a certain amount of quasi-legislative power when such action by the agency is reasonably necessary to further Congress's legislative powers and sufficient guidelines are set up to control the administrative agency's exercise of the responsibility entrusted to it. If Congress has legislated as far as is reasonably practicable and has left to administrative officials the duty to bring about the result legislated, rather than the power to legislate the result, then no unconstitutional delegation of legislative powers exists. *Buttfield v. Stranahan*, 192 U.S. 470, 496, 24 S.Ct. 349, 48 L.Ed. 525 (1904). In fact, Congress's power to delegate its authority has been interpreted broadly, and the United States Supreme Court has held delegations of legislative authority to be unconstitutional only twice so far as we can ascertain. *See Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). The central concept to be used in analyzing a delegation of legislative authority to an administrative agency is the adequacy of the statutory standards pursuant to which the delegation is made. If the criteria set forth by Congress are intelligible to the agency and its officers so that they are made aware of their duties and responsibilities and if the criteria provide an adequate basis for a court reviewing administrative action to determine whether such action is within the bounds of the legislative grant, then the delegation is not unconstitutional. *See United States v. Pastor*, 419 F.Supp. 1318, 1335–36 (S.D.N.Y.1975); *Amalgamated Meat Cutters v. Connally*, 337 F.Supp. 737, 746 (D.D.C.1971).

The question of whether § 78j(b) is an unconstitutional delegation of Congress's authority to regulate the use of fraudulent or manipulative devices in connection with the purchase or sale of securities has been passed upon by the United States District Court for the District of Delaware in *Speed v. Transamerica Corp.*, 99 F.Supp. 808, 832 (D.Del.1951). This Court is in agreement with the analysis in *Speed* that § 78j(b) contains adequate standards for governing the Securities and Exchange Commission's rule-making powers which have been delegated to it. Section 78j(b) states that it shall be unlawful for any person to use or employ, in connection with the purchase or sale of securities, any manipulative or deceptive device or contrivance in contravention of rules and regulations prescribed by the SEC. Rule 10b–5(c) prohibits persons from engaging in any act, practice, or course of business which operates as a fraud or deceit upon any person in connection with the purchase or sale of a security. The rule does little more than restate the language of § 78j(b) and is clearly consistent with Congress's intent in passing the Act that manipulative and deceptive devices be prohibited. The standards in § 78j(b) are clear enough to be intelligible both to the SEC and to this Court so that the Court is able to determine that § 10b–5 is a proper exercise of the authority delegated by the Act. It is the view of the Court that the standards set forth governing Congress's ability to delegate some of its power to administrative agencies are equally applicable to delegations in the criminal law field. *United States v. Pastor*, 419 F.Supp. 1318 (S.D.N.Y. 1975), involved Congress's delegation of authority to the Attorney General to add drugs to a schedule of controlled substances set forth by Congress in 21 U.S.C. § 811 & 812 which are of a similar nature to the drugs set forth on the schedules. The Court applied the key concept of the adequacy of the statutory standards to this delegation and noted that the Attorney General had not been granted the power to create a new crime but merely to add certain substances to a list so that they might be treated similarly to other substances the possession and sale of which Congress had outlawed. Similarly, in this case, Congress expressed its intent in § 78j(b) to outlaw the use of fraud or deceit in connection with the purchase and sale of securities. The Securities and Exchange Commission was not given the power to create a new crime but merely to prescribe certain administrative regulations to further the Con-

gressional scheme. Therefore, the fact that the SEC has been given some power to regulate criminal activity is not by itself sufficient to render the securities laws cited in the indictment of Pray unconstitutional.

Pray also contends that counts 12 and 13 of the indictment which charge violations of 15 U.S.C. § 78h(b) and 17 C.F.R. § 240.8c–1 which prohibit any broker or dealer who transacts business in securities through the medium of any member of the National Securities Exchange to hypothecate securities, are unconstitutional delegations of congressional authority because the conduct regulated by the Act is not sufficiently connected with interstate activity. Counts 12 and 13 allege that Pray used securities owned by two of his customers as collateral for a personal loan without their consent. Pray claims that because the illegal hypothecation alleged in counts 12 and 13 occurred in Pennsylvania, any interstate activities attending the acts are too far removed from the acts to constitute a basis for federal jurisdiction.

The Court believes that Pray's argument has little merit. Congress has a far-reaching power to regulate interstate commerce under Article I, § 8, cl. 3 of the Constitution and that power extends not only to interstate activities as such but also to local activities which have a substantial and harmful effect upon interstate commerce. *See Katzenbach v. McClung*, 379 U.S. 294, 297, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). In *Katzenbach*, the Court found that Congress could properly regulate discriminatory practices engaged in by the owners of Ollie's Barbecue, a small southern restaurant which obtained most of its business needs and customers intrastate rather than interstate, because it did a certain amount of interstate business and its refusal to serve meals to Negroes had some effect upon their right to travel interstate. It is the view of the Court that Congress could properly determine that a broker who does business through a National Securities Exchange affects interstate

commerce when he hypothecates securities of his customers in a wrongful manner. Such activities burden the customer's ability to sell the securities on the national market and may discourage some investors from purchasing securities altogether. Because such activity has a substantial harmful effect upon interstate commerce, the fact that it occurs within the borders of a particular state does not preclude Congress from regulating it.

Pray also argues that 15 U.S.C. § 78h(b) contains an unlawful delegation of Congress's authority to the Securities and Exchange Commission because that section, like § 78j(b), proscribes only hypothecation in contravention of rules and regulations promulgated by the Securities and Exchange Commission. It is the view of the Court that § 78h(b) and the regulations promulgated thereunder are sufficiently specific to apprise the Securities & Exchange Commission of the type of conduct which Congress intended to prohibit and that 17 C.F.R. § 240.8c–1 is within the bounds of the authority delegated to the Commission. Therefore, the Court reaches the same conclusion with respect to this delegation argument as it reached with respect to Pray's argument concerning § 78j(b) and Rule 10b–5. The same result was reached with respect to § 78h by the United States Court of Appeals for the Seventh Circuit in *United States v. McDermott*, 131 F.2d 313 (7th Cir. 1942), *cert. denied*, 318 U.S. 765, 63 S.Ct. 664, 87 L.Ed. 1137 (1943) and the Court, contrary to Pray's assertion, believes that more recent developments in the criminal law do not undercut the holding in *McDermott*.

Pray next contends that the indictment is deficient because it does not cite 15 U.S.C. § 78ff which provides that any person who violates the securities law is guilty of a crime and that the sections cited in the indictment do not by themselves specify any criminal conduct. F.R.Crim.P. 7(c)(3) states that the omission of a citation in an indictment shall not be grounds for dismissal if the error did not mislead the Defendant to his prejudice. Pray does not allege

any prejudice from the Government's failure to cite § 78ff. Moreover, each count of the indictment relating to violations of the securities laws contains the words "knowingly and willfully," and § 78ff makes only knowing or willful violations of the securities law a crime. Therefore, as a matter of law there can be no prejudice to Pray because the indictment contains allegations of a criminal state of mind in addition to allegations of violations of the securities laws.

■ Pray next contends that certain counts of the indictment are multiplicitous and that he may not lawfully be convicted of or charged with certain actions in separate counts of an indictment which are in fact the same action. To determine whether separate offenses may be carved out of a single incident, the standard to be followed is whether each separate offense alleged requires proof of a fact that the other does not. *See United States v. Chrane*, 529 F.2d 1236, 1238 (5th Cir. 1976). Therefore, the Court must examine each count which Pray claims to allege an offense already contained in another count in order to determine whether conviction on the second count would require proof of an element not required for conviction on the first count to be considered.

■ Pray first contends that Counts 1 and 4 suffer from illegal multiplicity. Count 1 alleges that Pray received money from one of his customers for the purpose of investing it in securities but converted part of the fund to his own use. Count 4 alleges that Pray mailed a letter on January 6, 1976 to Delaware Management Corporation authorizing the liquidation of securities belonging to a second customer in violation of the mail fraud statute, 18 U.S.C. § 1341. Pray's argument that the two involved the same offense is untenable because the action alleged in count 4 has absolutely *no relation* to the activity alleged in Count 1. The two counts involve completely separate transactions, separate customers, and took place approximately two and one half years apart.

■ Pray's next contention concerns counts 3 and 5. Count 3 alleges that on January 6, 1976, Pray caused 3,000 shares of one of his customer's securities to be sold without her knowledge and mailed a letter authorizing the sale. Count 5 alleges that on January 16, 1976, some 10 days later, Pray caused a check representing the proceeds of that sale to be mailed to himself, a violation of 18 U.S.C. § 2314 which prohibits the interstate transportation of a check known to have been obtained by fraud. Although Pray's illegal authorization of the sale of the securities and the subsequent mailing of a check to him are both part of a scheme to obtain money by defrauding one of his customers, the two acts are clearly separate. Pray could be convicted of a violation of the securities law if he knowingly authorized the sale of a customer's securities without the customer's consent. Whether or not a check representing the proceeds of the sale was mailed to him is irrelevant to the allegation that 15 U.S.C. § 78j(b) and 10b–5 were violated. Similarly, Pray's causing the $30,000 check to be mailed to himself, knowing that it had been obtained by his own fraud, requires proof not only of his knowledge of the fraudulent course of conduct but also proof that he caused Delaware Management Company to place the check in the mails so that it was transported in interstate commerce. The element of transportation in interstate commerce is necessary for the proof of the allegations in count 5 but not for those in count 3. Therefore, the offenses are clearly separate.

Pray next contends that he may not lawfully be convicted of all of counts 6, 7, and 8. Count 6 alleges that on September 20, 1976 Pray caused the sale of certain securities belonging to one of his customers without her consent and that he mailed a letter to the Delaware Management Corporation for the purpose of authorizing the sale. Count 7 alleges that on September 20, 1976 he mailed the same letter for the purpose of executing a scheme to defraud in violation of the mail fraud statute, 18 U.S.C. § 1341, and Count 8 alleges that some eight days later he caused the transportation of a $15,-

000 check through interstate commerce knowing the check to have been obtained by fraud. The same reasoning which applied to counts 3 and 5 applies to counts 6 and 8. Therefore, those counts do not suffer from multiplicity. Similarly, the element of causing the interstate transportation of a fraudulently obtained security is not present in count 7 so that counts 7 and 8 are not multiplicitous. Count 7, however, merely alleges the mailing of the same letter which was set forth in count 6. The Court must determine whether each of counts 6 and 7 requires proof of an element that the other does not.

■ Clearly, count 6 requires proof not only of the mailing of a letter but also Pray's execution of a scheme to defraud in violation of the securities laws. It is necessary that the government prove the existence of the scheme to defraud in order to establish a violation of the securities law and also the mailing of the letter in order to establish jurisdiction. In addition, the mailing of the letter must have been related in some way to Pray's execution of his scheme to defraud. 18 U.S.C. § 1341 prohibits a person who has devised a scheme to defraud from utilizing the mails for the purpose of executing the scheme. In *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1973), the Supreme Court held that in order for a Defendant to be convicted of a violation of the mail fraud statute, the use of the mails charged must be for the purpose of ·executing the scheme and that a mailing which is merely incidental to a scheme to defraud cannot support a conviction under that statute. Conversely, an incidental use of the mails in connection with a scheme to defraud in violation of the securities laws might be sufficient to support jurisdiction even if that use of the mails was not an integral part of the fraudulent scheme. However, in this case it appears that count 6 alleges that the mailing of the letter was for the purpose of employing the scheme to defraud and the Count 7 alleges the identical purpose. In *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), the Supreme Court indicated that mailings subsequent to the

execution of a fraudulent scheme which were designed to lull the victims into a false sense of security, thus making the apprehension of the perpetrators of the scheme less likely, were integral parts of a scheme including the use of the mailing and could support a conviction under § 1341. Thus, the Court is of the view that Count 7 of the indictment against Pray in fact would require proof of nothing which is not alleged in Count 6 and therefore the two counts are multiplicitous. Although there may be cases in which a Defendant can properly be charged with separate violations of the securities laws and the mail fraud statute, the indictment in this case precludes such separate charges. Because Count 7 adds nothing to the indictment which is not contained in Count 6, the Court will direct that Count 7 be dismissed.

Pray also claims that Counts 9, 10, and 11 are multiplicitous. Count 9 alleges that Pray authorized the sale of two blocks of securities owned by one of his customers without her consent and that he mailed a letter to Delaware Management Corporation on December 2, 1976 in furtherance of that scheme. Counts 10 and 11 allege the unlawful transportation of the proceeds of the sale, two separate checks representing the proceeds of the sale of each block of stock having been mailed on December 13 and December 15, 1976. The argument is the same argument made with respect to Counts 3 and 5 and Counts 6 and 8 which has already been analyzed and rejected by the Court.

■ Pray's final contention with respect to the multiplicity of the indictment is that Count 14, which charges a pattern of racketeering activity in violation of 18 U.S.C. §§ 1961, 1962(c) and 1963 does no more than repeat the allegations of the first 13 counts of the indictment. Section 1962(c) prohibits any person associated with an enterprise which affects interstate commerce to conduct or participate in the enterprise's affairs through a pattern of racketeering activities. The act is remedial in nature and should be read broadly in order

to effectuate the purpose of eliminating racketeering activity. *See United States v. Frumento*, 563 F.2d 1083, 1090–91 (3d Cir. 1977); *United States v. Forsythe*, 560 F.2d 1127, 1135–36 (3d Cir. 1977). Each particular count of the indictment requires proof of some element special to that count which is not required to prove a general pattern of racketeering activity. Indeed, not all of the counts need be proven in order to show such a pattern. On the other hand, proof of a pattern of racketeering activity is not required in any count but count 14. Therefore, the Court believes that different elements are required in the proof of counts 1 through 13 and count 14 and that the racketeering statute was designed primarily as an additional tool for the prevention of racketeering activity which consists in part of the commission of a number of other crimes constituting a pattern of such activity. The Court does not believe that the Government can charge someone with a series of crimes which would constitute a pattern of racketeering activity but not with engaging in such activity or, conversely, only with engaging in racketeering activity without being able to convict with respect to the underlying crimes. Therefore, the Court rejects Pray's contention that Count 14 is multiplicitous of the rest of the indictment.

Finally, Pray contends that the grand jury proceedings in this case render the indictment invalid because only one witness, Delmar H. Mayfield, Jr., a special agent of the Federal Bureau of Investigation, was presented and that that witness's testimony consisted entirely of hearsay. Pray, relying upon *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972), contends that the use of hearsay, especially "shoddy" hearsay by a law enforcement official who was not the one primarily involved in the investigation, coupled with the prosecutor's failure to explain clearly to the grand jury that the testimony was hearsay, supported the dismissal of an indictment returned on the basis of the hearsay testimony. In *Estepa* the United States Court of Appeals for the Second Circuit dismissed an indictment which was returned exclusively on the

basis of hearsay in the exercise of its supervisory powers. In that case, the Court noted that the Assistant United States Attorney presenting the case to the grand jury relied upon the testimony of the law enforcement officer who knew the least about the case rather than subjecting other officers to the minor inconvenience of testifying before the grand jury. The Court noted, however, that the use of hearsay might be permissible if a prosecutor did not mislead the grand jury as to the nature of the testimony or if the case did not involve a high probability that if eyewitness rather than hearsay testimony had been presented the grand jury would not have indicted. *United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir. 1972). Pray alleges in his brief in support of his motion to dismiss the indictment that his counsel believes that at least one of the alleged victims would have given testimony that would have caused the grand jury not to indict. However, this assertion is not supported by any specific facts. Further, the Government contends that although Stephen M. Robinson, an investigator for the Securities and Exchange Commission, was deeply involved in the investigation of Mr. Pray, Special Agent Mayfield was also a primary investigator rather than a law enforcement official who was relatively unacquainted with the circumstances surrounding the transactions to which he testified.

Proof of the facts in this case will to a very considerable extent rest on documentary evidence. Conversely, *Estepa* involved the sale of heroin to undercover police officers. The patrolman to whom the sale was made and the officers who subsequently arrested the defendants were not called to testify before the grand jury. The witness who was called related the substance of the occurrences to the grand jury including details of which he had no personal knowledge as if he had been present when the events took place. Clearly, eyewitnesses were easily available in that case to be presented to the grand jury. A victim of a securities fraud, although perhaps possessing some first-hand information concerning the crim-

inal activity allegedly engaged in by Pray, is not in the same position as an eyewitness to a crime because fraud, by its very nature, is concealed from the victim until after it has occurred. Pray's unsupported assertion concerning what the grand jury would have done had one or more of the victims testified is not, standing alone, a proper basis upon which to dismiss the indictment, and Special Agent Mayfield's testimony, although hearsay to some extent, was also based upon documentary evidence. Thus, it is not the "shoddy" variety of testimony condemned by the *Estepa* court and dismissal is not appropriate here.

An order will be entered dismissing Count 7 of the indictment.