Lorraine KLINE, Plaintiff,

v.

Charles HENRIE and Josephthal and Company, Inc., Defendants.

Civ. A. No. 87–1415.

United States District Court, M.D. Pennsylvania.

Feb. 22, 1988.

Franklin E. Kepner, Jr., Alice T.K. Cor-
ba, Kepner and Kepner, Berwick, Pa., for
plaintiff.

Robert N. Gawlas, Jr., Wilkes–Barre,
Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

Before the court is defendants' motion to dismiss. The motion has been fully briefed and is ripe for disposition.

## BACKGROUND

Plaintiff asserts five causes of action in her complaint and, in support thereof, alleges the following facts. Defendant Henrie at all times relevant to this action was an officer of defendant Josephthal and Company. Plaintiff initially consulted Henrie for the purpose of obtaining from him the name of a competent broker. Because Henrie and plaintiff were friends and plaintiff was worried about how the friendship might affect advice from him, plaintiff told Henrie that she did not wish to receive advice other than Henrie's opinion on who would be a competent broker. Despite plaintiff's concern, Henrie advised plaintiff that he could invest her money and obtain for her a 12.9 percent rate of return. Henrie also represented to plaintiff that she could not get a better return anywhere else and compared the 12.9 percent figure to the 6.5 percent rate of interest that a bank would pay to plaintiff. Henrie did not explain to plaintiff the income tax implications of the investment and did not initially reveal to her the possibility that the rate of return on plaintiff's investment might be lower than 12.9 percent.

Pursuant to Henrie's representations, plaintiff transferred to Josephthal and Company through Henrie over fifty-five thousand dollars in securities and checks. Although Henrie informed plaintiff that her money would be "placed with National Federal Securities Trust," Complaint at ¶ 10, Henrie did not furnish to plaintiff a financial report or a prospectus of the Trust until a year after plaintiff transferred her property to defendants. Nor did Henrie explain that the Trust was a fund in which shares would be purchased with plaintiff's money and that plaintiff would be required to pay a commission on the purchase of the shares. Plaintiff thought she had made an investment similar to purchasing a certificate of deposit. The investment did not yield the rate of return which Henrie initially quoted to plaintiff, and it was not until several months after plaintiff transferred her checks and securities to defendants that Henrie informed her the rate of return might be as low as 10 percent. Plaintiff claims to have suffered severe financial losses and emotional distress as a result of the circumstances surrounding her investment relationship with defendants.

On the basis of these allegations plaintiff asserts five causes of action. In Count I plaintiff claims that defendants' misrepresentations and omissions violated section 10(b) of the 1934 Securities Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.10b–5), promulgated pursuant to the Act. The second count contains a state law claim for breach of an alleged oral contract between plaintiff and defendants. In Count III plaintiff asserts a state law claim of misrepresentation and in Count IV a claim that defendants have violated the Pennsylvania Securities Act. It is unclear what cause of action is asserted in Count V, but it appears to be a variation of the state law, contract action contained in the second count.

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue in the first place that plaintiff has failed to make certain allegations which are necessary to support a Rule 10b–5 cause of action. Specifically, defendants contend that there are no allegations of the use by defendants of the mails or of an instrumentality of interstate commerce, no allegation that defendants' misrepresentations or omissions were material, and no allegation that plaintiff either reasonably relied on defendants' misrepresentations or that she acted with due diligence in dealing with defendants. With respect to plaintiff's state law claims, defendants claim that plaintiff has agreed to arbitrate such claims and argue that the court should both compel the arbitration of and dismiss those claims. Finally, defendants argue that the oral contract which defendants are alleged to have breached is unenforceable

in that it does not comply with the applicable Pennsylvania statute of frauds.

In disposing of defendants' motion the court finds it necessary to address only defendants' argument that plaintiff has failed to state a federal law securities claim upon which relief can be granted and that there is an agreement to arbitrate the state law claims which the court should honor by compelling arbitration.

### DISCUSSION

#### A. *Rule 10b–5 Claim*

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court must accept the factual allegations of the complaint as true and draw reasonable factual inferences to aid the pleader. *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). It is in light of these standards that the court must decide whether plaintiff has stated a Rule 10b–5 claim upon which relief can be granted.

#### 1. *Use of Interstate Commerce or the Mails*

Section 10 of the 1934 Securities Exchange Act makes it unlawful

for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ...

(b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in

the public interest or for the protection of investors.

15 U.S.C. § 78j. One of the rules promulgated by the Securities and Exchange Commission pursuant to the 1934 Act is Rule 10b–5, which provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

The Third Circuit Court of Appeals has set forth the elements of a Rule 10b–5 cause of action [1] as follows:

Section 10 was built on, and retained, many of the characteristics of the common law tort of deceit. [Citation omitted.] To prevail in such an action, a plaintiff had to establish six elements: (1) a false representation of (2) a material (3) fact; (4) defendant's knowledge of its falsity and his intention that plaintiff rely on it; (5) the plaintiff's reasonable reliance thereon; and (6) his resultant loss. [Citation omitted.] There is little dispute that plaintiffs in § 10(b) claims must generally satisfy all of these requirements as well [footnote omitted]....

*Peil v. Speiser,* 806 F.2d 1154, 1160 (3d Cir.1986).

■ Although "use of any means or instrumentality of interstate commerce or of the mails" is not listed in *Peil* as an ele-

---

**1.** The type of claim asserted in Count I of the complaint is alternatively referenced in case law as a § 10(b) claim or a Rule 10b–5 claim. That practice will be employed in this memorandum as well.

ment of a § 10(b) cause of action, the use of interstate commerce or of the mails is a fact on which jurisdiction under the Securities Exchange Act depends. *Glick v. Campagna*, 613 F.2d 31, 35, 36 (3d Cir.1979). Therefore, the court will treat that aspect of defendants' motion pertaining to the interstate commerce/mails requirement of § 10(b) as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter. Because defendants' arguments are directed to the failure of plaintiff on the face of the complaint to allege use of the mails or interstate commerce, the standard which the court must apply is substantially the same as the standard applicable to a 12(b)(6) motion.[2] "The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true." *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

█ In order for the court to have jurisdiction under the Securities Exchange Act, "[a]ll that need be shown is that the mails have been used in furtherance of the alleged fraud and there is no requirement that any fraudulent representation inducing a sale or purchase of securities be by way of the mails so long as the requisite connection between a scheme to defraud and the use of the mails is made out." *United States v. Pray*, 452 F.Supp. 788, 794 (M.D.Pa.1978) (J. Muir). In *Pray* the court found that the mailing by defendant of "lulling" letters, *i.e.*, letters which conceal the fraudulent device from the person

against whom it is utilized as part of an entire scheme to defraud, was sufficient to confer upon the court jurisdiction over the alleged securities law violations in that case. *Id.*

█ In the case at bar plaintiff does not specifically allege that an instrumentality of interstate commerce or the mails were used in defrauding her. However, there are several allegations in the complaint which indicate that plaintiff received documents in the mail which were related to the securities transaction between her and defendants. Several months after plaintiff transferred securities and checks to defendants, Henrie allegedly mailed a letter to plaintiff describing the interest that her investment could yield. Complaint at ¶ 13. Over a year after plaintiff made her investment, the prospectus of the Fund in which she had invested was mailed to plaintiff. Complaint at ¶ 10. Further, plaintiff alleges that she received statements and a quarterly report concerning her investment. Complaint at ¶ 18. Although it is not explicitly stated that she received the statements and quarterly report by mail, use of the mails with respect to those documents can be reasonably inferred.

█ Accepting plaintiff's allegations regarding use of the mails as true for purposes of this motion, the court finds that the complaint exhibits a basis for the court's jurisdiction under the Securities Exchange Act sufficient to withstand a Rule 12(b)(1) facial attack.[3] The fact, empha-

---

**2.** Although defendants argue that the complaint is devoid of allegations concerning the use of mails or interstate commerce, defendants do not argue that, *as a matter of fact*, the court lacks jurisdiction under the Securities Exchange Act or even that the mails were not used. Had defendants mounted a factual attack on the court's subject matter jurisdiction, with affidavits or otherwise, the court would have had to resolve the jurisdiction dispute as it would resolve all other questions on the merits of the case. *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 898 (3d Cir.1987), *citing, McClain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980). *But see Mortensen*, 549 F.2d at 891 (distinguishing between a Rule 12(b)(1) factual attack and a 12(b)(1) facial attack). Because the court is

treating defendants' arguments concerning use of the mails as a facial attack on the complaint, the court will not consider at this time the jurisdictional exhibits filed by plaintiff in support of her brief in opposition to defendants' motion.

**3.** This finding is essentially a conclusion that the court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over the claims contained in Count I of the complaint. The court reaches this conclusion despite plaintiff's failure to comply with Federal Rule of Civil Procedure 8(a), which requires a complaint to contain a "short and plain statement of the grounds upon which the court's jurisdiction depends...." No such statement can be found in the complaint. In fact, the first three paragraphs of the com-

sized by defendants, that the first specifically alleged use of the mails did not occur until after plaintiff had purchased shares in the Fund does not compel a different conclusion. It is not necessary, as ruled by Judge Muir in *Pray*, that the communication sent by mail contain the actual fraudulent misrepresentation which has given rise to the § 10(b) action but only that there be some connection between the mailed communication and the alleged fraud. *Accord, Harrison v. Equitable Life Assurance Society of the United States*, 435 F.Supp. 281, 284, 285 (W.D.Mich.1977). Or, as stated by another court in this circuit, "the fraud itself need not be transmitted through the jurisdictional means—it is enough if the jurisdictional means play a material role in the transaction." *Levin v. Marder*, 343 F.Supp. 1050, 1056 (W.D.Pa. 1972). The mailings alleged in the instant action, all of which related to the National Federal Securities Trust Fund ("Fund") in which plaintiff invested, display at least a connection between the use of the mails and the fraud which plaintiff claims was perpetrated upon her, *i.e.*, the inducement by defendants through various misrepresentations and omissions to purchase shares in the Fund.

### 2. *Materiality of Misrepresentations and Omissions*

"Under Rule 10b–5, misinformation by misrepresentation or omission is not by itself sufficient; the information in question must be material." *Healey v. Catalyst Recovery of Pa., Inc.*, 616 F.2d 641, 647 (3d Cir.1980). A fact is material if there is "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

In support of the Rule 10b–5 cause of action asserted in Count I of the complaint under consideration, plaintiff alleges that Henrie promised her a return of 12.9 percent on her investment but that the 12.9 percent yield never materialized. Plaintiff also alleges that Henrie failed to tell plaintiff that the personal property which plaintiff transferred to defendants would be used to purchase shares of a mutual fund. Nor did Henrie discuss with plaintiff at the time she made her investment the risk that plaintiff's investment might not yield the 12.9 percent interest which Henrie allegedly promised. Finally, plaintiff claims that Henrie did not explain the fact that a commission would be subtracted from the stocks and cash plaintiff transferred to defendants. As defendants note, plaintiff does not use the word "material" to describe the alleged misrepresentations and omissions which form the basis of her § 10(b) claim. The court disagrees that the failure to allege materiality specifically warrants dismissal of the § 10(b) claim.

As noted earlier in this memorandum, the court is obligated to draw reasonable factual inferences to aid the pleader when disposing of a motion to dismiss for failure to state a claim. Under the definition of materiality in the *TCS* case, the materiality of defendant Henrie's alleged misrepresentations and omissions can reasonably be inferred. In the opinion of the court such factors as the potential rate of return on an investment, the type of investment in which an investor is becoming involved, and a sales commission the investor is required to pay would all be significant in the deliberations of a reasonable investor. Thus, plaintiff's allegations are sufficient to withstand the challenge of the instant motion with respect to the materiality element of plaintiff's Rule 10b–5 claim.

### 3. *Reliance*

Proof of the element of reliance in a § 10(b) action varies, depending on whether the action is founded on allegations of

plaint seem to set forth, without plainly stating so, grounds for the court to assert diversity jurisdiction as described in 28 U.S.C. § 1332(a). A finding of federal question jurisdiction is necessary, however, for the maintenance of the Count I cause of action in this court. Otherwise, Count I would constitute nothing more than a state law fraud claim which would be subject to the same disposition as will be made of plaintiff's other state law claims. *Infra*.

omissions or allegations of misrepresentations. In a Rule 10b–5 case involving primarily a failure to disclose, the Supreme Court ruled that "positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Following the *Affiliated Ute* decision, the Third Circuit Court of Appeals confronted a case similar to the one at bar in that there were allegations of both misrepresentations and omissions. *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). The court declined to adopt a set rule with respect to the proof of reliance in such cases but adopted instead the following flexible approach: "[w]e conclude that the proper approach to the problem of reliance is to analyze the plaintiff's allegations, in light of the likely proof at trial, and determine the most reasonable placement of the burden of proof of reliance." *Sharp*, 649 F.2d at 188. The court proceeded to hold that under the circumstances in that case the defendant was properly made to shoulder the burden of refuting a presumption of the plaintiff's reliance. *Id.* at 189.

As in *Sharp*, the complaint in the instant case contains allegations of both misrepresentations and omissions. Contrary to defendants' argument, the court finds that the allegations of omissions are more prevalent than those of misrepresentations. *See* Defendants' Supporting Brief at 12. Thus, it is possible that in this case, as in the *Affiliated Ute* case, plaintiff will be entitled to a presumption of reliance and defendants will be put to the task of refuting that presumption. Such a possibility is ensured by the Third Circuit Court's opinion in *Sharp*, in which the determining factor was not considered to be which type of allegation was more prevalent but what was the most reasonable placement of the burden of proof. It is not necessary at this stage in the litigation of the case at bar to resolve which party should bear the burden with respect to proof of reliance. Nevertheless, the very existence of the possibility that plaintiff will not have the burden of proof renders premature the dismissal of plaintiff's Rule 10b–5 claim for her failure to allege specifically the element of reasonable reliance.

■ Further, the court finds that plaintiff has alleged reliance in her § 10(b) action and that that allegation is sufficient to withstand defendants' Federal Rule of Civil Procedure 12(b)(6) motion regardless of who will ultimately bear the burden of proving reliance. Plaintiff alleges simply in Count I that she "relied upon the factual statement made by the Defendant regarding the Defendant's ability to garner a 12.9% compounded interest on all monies given to the Defendant by the Plaintiff." Complaint at ¶ 20. Again, the court must accept this allegation as true for purposes of defendants' motion to dismiss. The fact that plaintiff did not actually use the term "reasonable" to describe her reliance is not fatal to her § 10(b) claim—the court will infer in the disposition of the instant motion that it was reasonable for plaintiff, an unsophisticated investor, to rely on the investment representations of an individual who is vice-president and sales manager of an investment firm.

### 4. *Due Diligence*

■ Defendants argue that due diligence is a separate element of a Rule 10b–5 cause of action which plaintiff must plead and establish in order to recover. In support of this proposition defendants cite opinions from the Fifth and Eleventh Circuit Courts of Appeal. However, the opinion of the Third Circuit Court in *Peil*, by which this court is bound, does not include due diligence as a separate element of a Rule 10b–5 claim. Neither does the one district court opinion from this circuit which defendants cite, *McClean v. Alexander*, 420 F.Supp. 1057 (D.Del.1976), speak of due diligence as an element of a Rule 10b–5 cause of action. The court in *McClean* refers to the concept of due diligence as a defense to a Rule 10b–5 claim which may

require a 10b–5 plaintiff to demonstrate that his reliance was well-founded. *Id.* at 1077. The court analogizes the due diligence defense to the defense of contributory negligence. *Id.* at 1078. Nowhere in the opinion does the *McClean* court refer to due diligence as an element of a 10b–5 claim that must be pleaded in order for a plaintiff to state a claim upon which relief can be granted.

Because the notion of due diligence is absent from the *Peil* list of the elements of a 10b–5 cause of action, and in light of the portrayal in *McClean* of the due diligence requirement as an affirmative defense, plaintiff's claim will not be dismissed for her failure to allege that she acted with due diligence in relying on defendant Henrie's representations.

## B. *Arbitration*

The United States Arbitration Act provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the agreement, providing the applicant is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). In making that determination the court is required to apply federal substantive law with respect to arbitrability, which has been set forth as follows by the Supreme Court:

> [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration … The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983).

■ The validity and enforceability of an agreement to arbitrate in a transaction involving commerce can only be attacked "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An argument that an arbitration agreement should be revoked could validly be based on the claim "that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi,* 473 U.S. at 627, 105 S.Ct. at 3354. Other grounds for revocation of an arbitration agreement would be mistake, duress, or the mutual agreement of the parties. *County of Middlesex v. Gevyn Construction Corp.,* 450 F.2d 53, 56 (1st Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1176, 31 L.Ed.2d 232 (1972).

In the case at bar both parties have submitted a photocopy of the arbitration agreement as exhibits to their submittals with respect to the instant motion.[4] The agreement as to arbitration states as follows:

> Any disputes or controversies between us arising out of or relating to this contract or the breach thereof or arising out of your account or the transactions therein shall be settled by arbitration in

---

**4.** Although defendants argue that the court should both compel arbitration of plaintiff's state claims and dismiss those claims, Defendants' Supporting Brief at 16, there is no provision in 9 U.S.C. § 3 for dismissal of claims

pending arbitration. Thus the court is treating the motion with respect to this particular issue as an application to compel arbitration to which 9 U.S.C. § 3 refers and not as a 12(b)(6) motion to dismiss.

accordance with the rules then obtaining of either the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) business days after receipt by me of your request for such election, I authorize you to make such election on my behalf. Any arbitration hereunder shall be before at least three (3) arbitrators and commenced in the city wherein I reside or the nearest city thereto in which such arbitration facilities are available. Notwithstanding the foregoing, I understand that I am not required to arbitrate any dispute or controversy which may arise under the federal securities laws, but instead may elect to have such dispute or controversy resolved through litigation in the Courts. I understand and agree that any award or decision of the arbitrators, or majority of them, shall be final and that a judgment on any such award may be entered in any Court having jurisdiction.

Plaintiff's Opposition Brief, Exhibit 7. This paragraph appears in bold print in a writing signed by plaintiff and by defendant Henrie.

▮▮▮ In an affidavit submitted in opposition to defendants' motion plaintiff declares that she did not sign the document containing the arbitration agreement until after she had transferred her securities and checks to defendants. Plaintiff also states that she never received a copy of the agreement and was unaware of what she had signed. Thus, plaintiff argues, she did not knowingly enter the agreement to arbitrate. Plaintiff does not argue that she was fraudulently induced to enter the agreement, that she signed the agreement under duress, or that she mistakenly signed it. Thus, plaintiff has not raised any of the grounds existing at law or in equity which would justify revocation of the arbitration agreement. That plaintiff may not have known what she was signing does not render the agreement ineffective. "Ignorance of the contents of a document or failure to read before signing is no defense to a contractual obligation under Pennsylvania law." *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 900 (3d Cir.1981), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). Bearing in mind the presumption in favor of arbitration as mandated in *Moses H. Cone,* the court is satisfied that the parties have entered an agreement to arbitrate.

The second task of a court deciding a request to compel arbitration is to determine whether legal constraints external to the parties' agreement foreclose arbitration. *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3355. Plaintiff does not argue that such constraints exist, and the court is not aware of any reason why plaintiff's claims are not arbitrable. Therefore, the court will compel arbitration in accordance with defendants' request. The parties have legitimately excluded from their arbitration agreement disputes arising under federal securities law. *Id.* Only the state law claims asserted in Counts II through V must be submitted to arbitration—the Rule 10b–5 claim contained in Count I will continue to be litigated in this court.[5] Litigation of the state law claims will be stayed until the arbitration of those claims is complete. Because the court is compelling arbitration of the state law claims, it is unnecessary for the court to address defendants' arguments concerning the effect of the Pennsylvania statute of frauds on plaintiff's cause of action for breach of oral contract.

## CONCLUSION

On the basis of the preceding discussion, the court concludes that plaintiff has stated

---

5. The Supreme Court has addressed the possibility that compelling arbitration in a case such as the one at bar may result in bifurcated proceedings and redundant litigation. In *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) the Court stated that "[w]e agree ... that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217, 105 S.Ct. at 1241.

in Count I of the complaint a Rule 10b–5 claim upon which relief can be granted. Plaintiff, however, will be required to submit the remainder of her claims to arbitration in accordance with the agreement between the parties. The court will grant defendants' motion in part and deny it in part.

### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) Defendants' motion to dismiss the complaint is denied;

2) Defendants' request that the court compel arbitration is granted;

3) Litigation of Counts II through V is stayed pending the completion of arbitration with respect to those claims; and

4) Litigation of Count I shall proceed according to the scheduling order issued on November 29, 1987.